**H2O HOUSEBOAT VACATIONS INC., Plaintiff–Appellant,**

v.

**Roberta HERNANDEZ, Defendant–Appellee.**

**No. 95–55904.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 1996.

Decided Dec. 26, 1996.

Matthew W. Monroe, Law Offices of Ralph M. Singer, Hermosa Beach, CA, and Paul Felser, Portman & Felser, Savannah, GA, for plaintiff-appellant.

Christopher J. Morey, Morey & Upton, Costa–Mesa, CA, and Kent S. Berk, Law Office of Kent S. Berk, Phoenix, AZ, for defendant-appellee.

Before: BROWNING, THOMPSON and THOMAS, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Appellee Roberta Hernandez and her family (the Hernandez family) were injured by carbon monoxide fumes in a houseboat they rented from the appellant H2O Houseboat Vacations (H2O) at Lake Havasu in Arizona. Asserting admiralty jurisdiction, H2O filed an action in the Central District of California seeking to limit its liability under the Limitation of Vessel Owner's Liability Act, 46 U.S.C.A. App. § 181 *et seq.*

The district court granted the Hernandez family's motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. The district court determined that maritime jurisdiction was lacking because the incident which caused injury to the Hernandez family did not have the potential to disrupt maritime commerce.

The houseboat was tied to the shore of Lake Havasu. The Hernandez family slept on the houseboat the night before they were to take it out on the lake the next day. It was summertime and it was hot. The family closed all of the windows in the sleeping area of the houseboat, turned on the air conditioning, and went to sleep. During the night, the Hernandez family was seriously injured by carbon monoxide fumes within the houseboat.[1]

Before the Hernandez family filed suit for their injuries, H2O filed its own action in the federal district court seeking to limit its liability under the Vessel Owner's Liability Act. It now appeals the district court's dismissal for lack of subject matter jurisdiction.

We have jurisdiction under 28 U.S.C. § 1291. We conclude, as did the district court, that the incident which caused injury to the Hernandez family did not have the potential to disrupt maritime commerce; therefore, subject matter jurisdiction predicated upon a claim in admiralty was lacking,

---

1. The cause of the carbon monoxide emission was probably faulty equipment aboard the house-boat. However, we need not decide this because it is unnecessary to our analysis.

and we affirm the district court's dismissal under Rule 12(b)(1).[2]

## I

### Subject Matter Jurisdiction

If H2O's action was not properly a suit in admiralty relating to a maritime tort, the district court lacked jurisdiction because this was the only basis for the court's subject matter jurisdiction.

■ We review de novo a district court's determination that it lacks subject matter jurisdiction. *Wilson v. A.H. Belo Corp.*, 87 F.3d 393, 396 (9th Cir.1996). We review for clear error the district court's findings of fact relevant to its determination of subject matter jurisdiction. *Id.*

■ The Constitution provides that "[t]he judicial Power shall extend ... to all Cases of admiralty and maritime Jurisdiction." U.S. Const. Art. III, § 2. Congress has granted federal district courts original, exclusive jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction" in 28 U.S.C. § 1333(1).

The Supreme Court recently considered when an alleged tort involving a pleasure craft, such as the houseboat in this case, forms the proper basis for maritime tort subject matter jurisdiction. In *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995), the Court established a two-pronged "location" and "connection" test for such jurisdiction. *Id.* at ——, 115 S.Ct. at 1048. The "location" part of the test asks whether "the tort occurred on navigable water or whether [the] injury suffered on land was caused by a vessel on navigable water." *Id.* Here, H2O satisfied the location prong because the injury occurred on Lake Havasu, a navigable waterway.

The "connection" prong of the *Grubart* test has two subparts. The first subpart asks whether the general features of the incident causing the injury indicate the incident had a "potentially disruptive impact on maritime

commerce." *Id.* To decide this question, we must first determine what was the incident that caused the injury. *See id.* at —— ——, 115 S.Ct. at 1050–51.

The Court told us how to do this in *Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990). There, a fire was caused by a defective washer/dryer aboard a pleasure boat docked at a marina on a navigable body of water. *Id.* at 360, 110 S.Ct. at 2894–95. The fire burned not only the boat itself but the marina and other boats docked nearby. *Id.* The Court did not describe the incident broadly as a "fire," nor narrowly as a "fire ... damaging nothing but pleasure boats." *Grubart*, 513 U.S. at ——, 115 S.Ct. at 1051. Rather, in *Sisson*, the Court described the incident at "an intermediate level of possible generality" as " 'a fire on a vessel docked at a marina on navigable waters.' " *Grubart*, 513 U.S. at ——, ——, 115 S.Ct. at 1051, 1050 (quoting *Sisson*, 497 U.S. at 363, 110 S.Ct. at 2896). The question was whether that incident, so described, had a potential to disrupt maritime commerce. The court held it did.

Here, the incident that caused the injury was the emission of carbon monoxide fumes inside a contained space within a houseboat tied to the shore. This incident had no potential to disrupt maritime commerce. The carbon monoxide was dangerous only because it was contained in the sleeping area of the houseboat. The fumes would not be dangerous if they escaped. This is far different from the fire on the boat in *Sisson*. There, the fire had the potential of spreading to other boats and to the marina. Indeed, it did.

It is possible to speculate that the houseboat would have posed a hazard to maritime commerce if it had slipped its tie to the shore and had drifted onto Lake Havasu with the Hernandez family inside unconscious from carbon monoxide, or if the Hernandez family had taken the boat out on the lake and whoever was steering the boat had been overcome with carbon monoxide fumes and lost consciousness.

---

**2.** Because we hold that the district court lacked subject matter jurisdiction to hear this case, we do not reach the question whether venue was

properly laid in the Southern District of California, or, if it was not, whether the action should have been transferred instead of dismissed.

Such speculation, however, would require us to ignore the actual "incident" that caused injury to the Hernandez family. That incident was the emission of carbon monoxide fumes encapsulated within the houseboat tied to the shore. That incident, defined as required by *Sisson* and *Grubart*, did not have the potential to disrupt maritime commerce.

Because the incident which caused the injuries to the Hernandez family did not have the potential to disrupt maritime commerce, the first subpart of the *Grubart* connection test was not met. Subject matter jurisdiction could not be predicated on a maritime tort in admiralty. The district court did not err in dismissing the suit for lack of jurisdiction.[3]

## II

### Procedural Challenges

H2O challenges three of the district court's rulings on procedural issues connected with the court's dismissal for lack of subject matter jurisdiction. We conclude the district court correctly denied each of these procedural challenges.

First, H2O argues the district court abused its discretion by refusing to grant additional discovery. However, despite H2O's contention to the contrary, facts about the cause of the carbon monoxide emission were not relevant to the question whether the trial court had subject matter jurisdiction. *See Sisson*, 497 U.S. at 363, 110 S.Ct. at 2896 (stating that "[t]he jurisdictional inquiry does not turn on the ... particular facts of the incident ... such as the source of the fire" (the injury causing event in *Sisson*)). And no pertinent fact bearing on the jurisdictional inquiry was in dispute. *See America West Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 801 (9th Cir.1989).

Second, H2O contends the question of jurisdiction is dependent on the resolution of factual issues going to the merits of the case.

According to H2O, these facts include the source and effect of the carbon monoxide emission. In such a case, H2O argues, the district court should assume the truth of allegations in the complaint, and dismiss for lack of jurisdiction only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987) (internal quotation omitted).

We understand H2O's argument but reject it. *Sisson* specifically held that during its jurisdictional inquiry a court should not consider specific facts about the merits of a case, including the details of the defect that caused the incident. *Sisson*, 497 U.S. at 363, 110 S.Ct. at 2896. *Roberts* is inapposite.

■ Third, H2O argues the district court erred in failing to hold an evidentiary hearing to determine the credibility of Robert Pacheco, Jr., one of the Hernandez family's declarants. We disagree. The district court did not rely on Pacheco's credibility in analyzing the jurisdictional question because the broad facts the district court considered in determining the jurisdictional question were undisputed. These facts were: (1) the houseboat was tied to the shore of a navigable body of water; and (2) the alleged injuries were caused by carbon monoxide fumes within the houseboat. The district court also correctly took judicial notice of the fact that to be injurious carbon monoxide emissions must be contained within an enclosed space. None of these facts implicates a question of credibility. No evidentiary hearing was required.

## III

### Attorney Fees

The Hernandez family requests attorney fees, damages, and costs under Rule 38 of the Federal Rules of Appellate Procedure.

---

3. Because the incident which caused the injuries fails to meet the first prong of the maritime connection inquiry for admiralty jurisdiction, we do not reach the conjunctive second prong of that inquiry—"whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Grubart*, 513 U.S. at ——, 115 S.Ct. at 1051. Thus, we do not consider H2O's argument that its rental of the houseboat to the Hernandez family for use on Lake Havasu was in the nature of a "bare boat" charter, a "traditional maritime contract." Appellant's Opening Brief, page 10.

We deny their request because the present appeal is not frivolous.

### IV

#### Conclusion

The district court correctly dismissed H2O's complaint for lack of subject matter jurisdiction. The emission of carbon monoxide by a vessel tied to a shoreline does not have the potential to disrupt maritime commerce.

AFFIRMED.