**Lloyd Victor RAMIREZ, Plaintiff,**

v.

**Matt BUTLER, et al., Defendants.**

**No. C–04–0593 EMC.**

United States District Court, N.D. California.

June 3, 2004.

Lloyd Victor Ramirez, Stockton, CA, pro se.

Paul J. Steiner, Law Offices of Paul J. Steiner, San Francisco, CA, for Plaintiff.

Raelyn Mari Ohira, Law Offices of George W. Nowell, Rebecca S. Pearson, Walter R. Schneider, Hanson Bridgett Marcus Vlahos & Rudy, LLP, San Francisco, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND GRANTING DEFENDANTS' REQUESTS FOR JUDICIAL NOTICE (Docket Nos. 8, 9, 19, 22)

CHEN, United States Magistrate Judge.

Plaintiff Lloyd Victor Ramirez has sued Defendants the San Rafael Yacht Harbor, Matt Butler (the owner and operator of the San Rafael Yacht Harbor), Loch Lomond Marina, and Pat Lopez (the harbormaster of Loch Lomond Marina). *See* Compl. ¶¶ 3, 5. Mr. Ramirez has asserted two causes of action in his complaint. The first cause of action is against Mr. Butler and the San Rafael Yacht Harbor ("San Rafael Defendants") for title to and right of possession of two sailboats as well as damages for wrongful taking of the sail-

boats. The second cause of action is against Mr. Lopez and Loch Lomond Marina ("Loch Lomond Defendants") for violation of privacy. Several days after Mr. Ramirez filed his complaint in federal court, he filed the same exact complaint in state court.

The Loch Lomond Defendants have moved to dismiss the case on the basis that the Court lacks jurisdiction. The San Rafael Defendants have joined in the motion. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby GRANTS the motion to dismiss. The Court also grants the Loch Lomond Defendants' requests for judicial notice.

## I. FACTUAL & PROCEDURAL BACKGROUND

The following facts are alleged in Mr. Ramirez's complaint: Mr. Ramirez owned two vessels, a Wayfarer sailboat and a Hunter sailboat, which he kept at the San Rafael Yacht Harbor for a fee. *See* Compl. ¶¶ 2, 7. The sailboats were Mr. Ramirez's primary place of abode. *See* Compl. ¶ 14.

A dispute arose between Mr. Ramirez and the San Rafael Defendants concerning fees and charges for berthing and other services (approximately $2,000). *See* Compl. ¶ 7. On or about February 10, 2003, Mr. Ramirez moved the sailboats to Loch Lomond Marina. *See* Compl. ¶ 7.

On or about February 18, 2003, the Loch Lomond Defendants released Mr. Ramirez's personal residence address and the whereabouts of the sailboats to the San Rafael Defendants, without the permission or consent of Mr. Ramirez. *See* Compl. ¶ 19. On or about the same day, the San Rafael Defendants trespassed on the sailboats and sold, disposed, or converted them to their own use. *See* Compl. ¶ 11. The San Rafael Defendants also sold, disposed, or converted to their own use Mr.

Ramirez's personal property (*e.g.*, boat tackle, spare parts) which was on the boats. *See* Compl. ¶ 12.

Mr. Ramirez has asked the Court to declare that he is the true and lawful owner of the sailboats, to award him damages for the San Rafael Defendants' wrongful conversion of the boats and his personal property, and to award him damages for the Loch Lomond Defendants' violation of his privacy. Mr. Ramirez has demanded a jury trial.

Several days after Mr. Ramirez filed his complaint in federal court, he filed the same exact complaint in state court. In his opposition, Mr. Ramirez claims that he will dismiss his state court case if the Court denies the motion to dismiss.

## II. DISCUSSION

Defendants argue that the Court should dismiss Mr. Ramirez's complaint because the Court lacks subject matter jurisdiction over the case. Mr. Ramirez contends that there is subject matter jurisdiction—more specifically, that there is admiralty jurisdiction.

### A. *Legal Standard*

■ Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. As the party invoking the jurisdiction of the federal court, the plaintiff bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 376–78, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994).

■ A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *See Thornhill*

*Publishing Co., Inc. v. General Tel. & Elecs. Corp.,* 594 F.2d 730, 733 (9th Cir. 1979). When the complaint is challenged for lack of subject matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *See NL Indus. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

Faced with a factual attack on subject matter jurisdiction, the trial court may proceed as it never could under Rule 12(b)(6) or Fed.R.Civ.P. 56.... No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Thornhill,* 594 F.2d at 733 (internal quotation marks omitted).

### B. *Diversity or Federal Question Jurisdiction*

As a preliminary matter, the Court should consider first whether there is a basis for subject matter jurisdiction aside from admiralty jurisdiction. There is not. With respect to diversity jurisdiction, the parties are not completely diverse. Mr. Ramirez evidently resides in California (he does not allege otherwise) and the San Rafael Yacht Harbor and Loch Lomond Marina both operate in California. With respect to federal question jurisdiction, no federal question is affirmatively and distinctly presented on the face of Mr. Ramirez's complaint; rather, there are only state law claims for conversion and violation of privacy. *Cf. Romero v. International Terminal Operating Co.,* 358 U.S. 354, 368, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959) (holding that maritime cases not involving federal statutes do not arise under the laws of the United States for purposes of federal question jurisdiction). Therefore,

the only basis for which this Court could assert subject matter jurisdiction is admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1). *See Grubart v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 531, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995) ("A federal court's authority to hear cases in admiralty flows initially from the Constitution, which 'extend[s]' federal judicial power 'to all Cases of admiralty and maritime Jurisdiction.' Congress has embodied that power in a statute [§ 1333(1)]....").

### C. *Admiralty Jurisdiction*

Title 28 U.S.C. § 1333(1) provides that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). Basically, pursuant to this statute, an in rem maritime claim must be brought in federal court under the federal court's admiralty jurisdiction. *See Ventura Packers, Inc. v. F/V JEANINE KATHLEEN,* 305 F.3d 913, 916 n. 1 (9th Cir.2002) (noting that an in rem claim is within the exclusive admiralty jurisdiction of the federal courts). In contrast, a plaintiff may bring an in personam maritime claim in (1) federal court under the federal court's admiralty jurisdiction, (2) federal court under the federal court's diversity jurisdiction (if the requirements are met), or (3) state court. *See Ghotra,* 113 F.3d at 1054; *see also Trentacosta v. Frontier Pac. Aircraft Indus., Inc.,* 813 F.2d 1553, 1559 (9th Cir.1987) (stating that, where plaintiff has independent basis for maritime claim, such as federal question, claim is not "cognizable only in admiralty"). "The difference between these [three] choices is mostly procedural; of greatest significance is that there is no right to jury trial if general admiralty jurisdiction is invoked, while it is preserved for claims

based in diversity or brought in state court. The same substantive law pertains to the claim regardless of the forum...." *Ghotra*, 113 F.3d at 1054–55.

In Mr. Ramirez's complaint, he asserts that he has both an in rem and an in personam maritime claim. At this point, however, the Court need not address—as the Loch Lomond Defendants argue—whether Mr. Ramirez has properly asserted an in rem claim. Whether Mr. Ramirez has an in rem or an in personam claim, the only way that this Court can have jurisdiction over this case is through admiralty jurisdiction. The first issue, therefore, is whether, given the facts alleged by Plaintiff, there is a basis for admiralty jurisdiction.

Pursuant to Supreme Court case law,

a party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity. A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved" to determine whether the incident has "a potentially disruptive impact on maritime commerce." Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a substantial relationship to traditional maritime activity."

*Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995).

█ Defendants do not dispute that the main tort at issue (*i.e.*, conversion of the sailboats) occurred on navigable water. Moreover, given the location of San Rafael, where both the San Rafael Yacht Harbor and Loch Lomond Marina are located, the alleged conversion occurred on navigable water. *See Daniel Ball*, 77 U.S. 557, 563, 10 Wall. 557, 19 L.Ed. 999 (1870) (defining navigable water). In addition, Defendants do not dispute that the activity giving rise to the conversion had a substantial relationship to traditional maritime activity. In fact, Defendants basically concede this point as they should based on *Sisson v. Ruby*, 497 U.S. 358, 367, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990) (concluding that "storing and maintaining a vessel at a marina on a navigable waterway is substantially related to traditional maritime activity").

Defendants maintain, however, that there is no admiralty jurisdiction because, in the instant case, the incident at issue does not have a potentially disruptive impact on maritime commerce. Defendants emphasize—and Mr. Ramirez concedes—that his sailboats are not commercial vessels. *See* Compl. ¶ 14 (alleging that sailboats were his primary place of abode).

The Supreme Court has provided some guidance for courts in deciding whether an incident has a potentially disruptive impact on maritime commerce. In *Sisson*, for example, a fire erupted in the area of a pleasure yacht's washer/dryer unit, which then destroyed the vessel as well as several neighboring vessels and the marina. *See Sisson*, 497 U.S. at 360, 110 S.Ct. 2892. The Supreme Court stated that "[t]his case involves a fire that began on a noncommercial vessel at a marina located on a navigable waterway. Certainly, such a fire has a potentially disruptive impact on maritime commerce, as it can spread to nearby commercial vessels or make the marina inaccessible to such vessels. Indeed, fire is one of the most significant hazards facing commercial vessels." *Id.* at 362, 110 S.Ct. 2892.

In *Grubart*, the Supreme Court noted that the description of the incident must be "at an intermediate level of possible generality." *Grubart*, 513 U.S. at 538, 115 S.Ct. 1043. The Supreme Court explained that, in *Sisson*, it would have been too general to differentiate cases to speak of the incident as "fire"; "at the other extreme, to have described the fire as damaging nothing but pleasure boats and their tie-up facilities would have ignored, among other things, the capacity of pleasure boats to endanger commercial shipping that happened to be nearby." *Id.* at 538–39, 115 S.Ct. 1043. The Supreme Court "rejected both extremes and instead asked whether the incident could be seen within a class of incidents that posed more than a fanciful risk to commercial shipping." *Id.* at 539, 115 S.Ct. 1043.

The Ninth Circuit has also provided some guidance for courts in making a determination as to whether an incident has a potentially disruptive impact on maritime commerce. Most notably, in *H2O Houseboat Vacations, Inc. v. Hernandez*, 103 F.3d 914 (9th Cir.1996), the plaintiffs were family members who were injured by carbon monoxide fumes in a houseboat that they rented from the defendant. *See id.* at 915. The district court held that it did not have admiralty jurisdiction because the incident that caused injury to the plaintiffs did not have the potential to disrupt maritime commerce. *See id.* The Ninth Circuit agreed.

According to the Ninth Circuit, the incident that caused injury to the plaintiffs was the "emission of carbon monoxide fumes inside a contained space within a houseboat tied to the shore." *Id.* at 916. It continued: "This incident had no poten-

tial to disrupt maritime commerce. The carbon monoxide was dangerous only because it was contained in the sleeping area of the houseboat. The fumes would not be dangerous if they escaped. This is far different from the fire on the boat in *Sisson*. There, the fire had the potential of spreading to other boats and to the marina. Indeed, it did." *Id.*

The court noted that one could "speculate that the houseboat would have posed a hazard to maritime commerce if it had slipped its tie to the shore and had drifted onto [the lake] with the Hernandez family inside unconscious from carbon monoxide, or if the Hernandez family had taken the boat out on the lake and whoever was steering the boat had been overcome with carbon monoxide fumes and lost consciousness." *Id.* But the court said that this speculation would require it "to ignore the actual 'incident' that caused injury to the Hernandez family. *That incident was the emission of carbon monoxide fumes encapsulated within the houseboat tied to the shore.*" *Id.* (emphasis added).

Notably, the Ninth Circuit in *H2O* did not frame the incident at issue as emission of carbon monoxide fumes inside a contained space *within a vessel* tied to the shore. If it had, then it could have hypothesized that the emission of carbon monoxide fumes in a commercial vessel rather than a houseboat would potentially be disruptive to maritime commerce—just as conversion of vessels stored and maintained at harbors and marinas might be disruptive to maritime commerce, but not conversion of noncommercial sailboats specifically.[1] As the Ninth Circuit in *H2O* characterized the incident at issue with

---

1. In a supplemental letter brief, Mr. Ramirez suggests that the incident at issue is the storage and maintenance of a vessel at a marina. Mr. Ramirez has confused the issues. That this case involves storage and maintenance of

a vessel in a marina may establish the matter is substantially related to traditional maritime activity. It does not in and of itself establish disruptive impact on maritime commerce.

**1040**

reference to a non-commercial houseboat and not to vessels (generally including commercial vessels), this Court must do the same in the instant case.

■■ Affording relevance to whether the vessel at issue is commercial or non-commercial is consistent with the decisions of the Supreme Court. If the vessel is commercial, it is highly likely that the activity will be found to affect maritime commerce, virtually by definition. If, on the other hand, the affected vessel is non-commercial, the court must examine the magnitude of the risk of disrupting maritime commerce. In some instances, the commercial or non-commercial nature of the vessel is irrelevant to that risk. A collision of two boats on navigable waters presents the same hazards and risk of disrupting maritime commerce regardless of whether the boats are commercial or non-commercial. *See, e.g., Foremost Ins. Co. v. Richardson,* 457 U.S. 668, 675, 102 S.Ct. 2654, 73 L.Ed.2d 300 (1982). Similarly, the risk to the dock and other vessels (including commercial vessels) resulting from a fire is the same whether the source of the fire is commercial or recreational boat. *See, e.g., Sisson,* 497 U.S. at 362, 110 S.Ct. 2892. When the hazardous activity resides with a recreational vessel, the question is the risk of collateral damage from this kind of incident, which would substantially disrupt maritime commerce.

Here, as in *H2O,* the activity in question does not present a sufficient risk of collateral damage or impact upon maritime commerce necessary to establish admiralty jurisdiction. Plaintiff does not allege that the vessels were converted or taken in a manner that posed a safety hazard to other vessels. Nor does Plaintiff allege that the alleged conversion by Defendant was part of a widespread pattern or practice of conversion affecting commercial (as well as non-commercial) vessels and thus interfering with maritime commerce. Admiralty

jurisdiction does not lie in the instant case because the incident at issue (*i.e.,* conversion of the noncommercial sailboats) does not have a potentially disruptive impact on maritime commerce. Because there is no admiralty jurisdiction, the Court cannot exercise supplemental jurisdiction over the state law claim for violation of privacy.

### III. *CONCLUSION*

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss. The Court also GRANTS Defendants' two requests for judicial notice. The Court emphasizes that its ruling here does not affect in any way Mr. Ramirez's complaint based on the same events in state court.

IT IS SO ORDERED.