812 F.2d 1173
 Frankie Lee ROBERTS, Petitioner-Appellant,
v.
Helen G. CORROTHERS, Regional Commissioner, United States
Parole Commission; Rob Roberts, Warden, Federal
Correctional Institution, Pleasanton,
California, Respondents-Appellees.
 No. 86-1584.
 United States Court of Appeals,
Ninth Circuit.
 Argued Aug. 12, 1986.
Submitted Oct. 23, 1986.
Decided March 16, 1987.
 
 William J. Genego, Noel Ragsdale, Los Angeles, Cal., for petitioner-appellant.
 Stephen A. Shefler, Asst. U.S. Atty., San Francisco, Cal., for respondent-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before WRIGHT and FARRIS, Circuit Judges, and LETTS,* District Judge.
 FARRIS, Circuit Judge:
 
 
 1
 Frankie Lee Roberts and three codefendants were convicted in federal court of conspiracy to possess and distribute heroin. She was sentenced to eight years in prison and began serving her sentence in February 1983. In this habeas corpus action, Roberts alleges that the United States Parole Commission's evaluation of the severity of her offense violated the Commission's guidelines and the due process and equal protection clauses of the Constitution. The district court dismissed two of Roberts' claims and denied the third after a show cause hearing. Roberts appeals from the district court's denial of her petition. We have no jurisdiction to review substantive decisions of the Parole Commission and limited jurisdiction to review the Commission's decision-making processes. Our jurisdiction to hear challenges to the Commission's decision-making processes includes only constitutional claims and claims that the Commission has acted outside its statutory discretion. Roberts' claims actually challenge unreviewable discretionary decisions of the Commission. Therefore we lack jurisdiction and affirm.
 
 I. BACKGROUND
 
 2
 In July 1983, the Parole Commission held an initial hearing to evaluate Roberts' case for parole. As prescribed by statute, the Commission evaluated the severity of Roberts' offense and the risk of releasing her. As prescribed by its regulations, the Commission made these evaluations in the form of an "offense severity" score and a "salient factor" score. Roberts received an offense severity score of eight and a salient factor score of nine, resulting in a parole release range of 100+ months. Because the minimum of 100 months was longer than her eight-year sentence, Roberts was denied parole and ordered to serve the full sentence. She appealed this decision. It was affirmed at both levels of administrative appeal.
 
 
 3
 Roberts filed a habeas corpus petition under 28 U.S.C. Sec. 2241 challenging the Commission's offense severity score. She alleged that the Commission (1) violated its regulations and her right to due process by relying on an erroneous statement of the quantity of drugs involved in determining the severity of her offense; (2) violated her rights to due process and equal protection by rating her offense more severely than the allegedly identical offenses of her co-defendants; and (3) violated her right to due process by erroneously regarding Roberts as having a managerial or proprietary ("non-peripheral") role in the offense. The district court dismissed the first two claims without requiring the government to respond, but ordered the government to show cause why Roberts' petition should not be granted on her third claim. After a hearing, the district court denied Roberts' third claim, dismissing the petition. Roberts appealed.
 
 II. JURISDICTION: WALLACE v. CHRISTENSEN
 
 4
 Even though neither of the parties has raised the issue, we must determine at the outset whether we have jurisdiction. In re Ryther, 799 F.2d 1412, 1414 (9th Cir.1986). Our review of decisions by the Parole Commission is limited, and we have recently charted those limits in Wallace v. Christensen, 802 F.2d 1539 (9th Cir.1986) (en banc). We held there that Congress committed all "substantive decisions to grant or deny parole" to the discretion of the Parole Commission and that such decisions are therefore not reviewable. Id. at 1545. Wallace thus explicitly rejects our earlier cases that have reviewed Parole Commission decisions for abuse of discretion. Id. at 1542. "By definition, a bare allegation that the Commission has abused its discretion acknowledges that the Commission has exercised a judgment, if improperly, within its discretion. Congress has specifically withdrawn such cases from our jurisdiction." Id. at 1551 (emphasis in original).
 
 
 5
 Wallace also determined the extent to which "removal of our jurisdiction to review the Commission's decisions to grant or deny parole also precludes our review of the Commission's decision-making processes." Id. at 1546 (emphasis in original). Wallace declined to take an "all or nothing" position, holding instead that Congress intended judicial review of some aspects of Parole Commission decision-making but not others. Analysis of the Parole Act and its legislative history led us to conclude in Wallace that "Congress intended to carve out an area of decision-making which, like the decision to grant or deny parole, is committed to agency discretion and hence unreviewable even for abuse of discretion." Id. at 1551. Within this unreviewable area are those judgments integral to individual parole decisions, judgments "as to: the 'institutional behavior of each prospective parolee,' the 'nature and circumstances of the offense and the history and characteristics of the prisoner,' the 'concepts of general and special deterrence, retribution and punishment,' [and] the 'relevance of material before the Commission'...." Id. at 1549-50 (quoting Joint House-Senate Conference Report No. 94-838, 94th Cong.2d Sess. 19, reprinted in 1976 U.S.Code Cong. & Ad.News 351).
 
 
 6
 Some aspects of Parole Commission decision-making are reviewable, however. Because "Congress has delineated boundaries beyond which the Commission may not act," courts "may consider whether the Commission has acted outside these statutory limits." Wallace, 802 F.2d at 1551. To determine jurisdiction, then, a court must "inquire whether the Commission has in fact made a 'judgment' within its discretion. Specifically, the court's inquiry is addressed to whether the Commission's decision involves the exercise of judgment among a range of possible choices or options, or involves a plain violation of a matter which does not admit of discretion and choice." Id. at 1552. For example, "[a]lthough the relevance of the information considered by the Commission is a matter committed to discretion, a court may review whether the Commission completely failed to consider these factors which by statute it is required to consider in rendering its parole decision." Id. at 1551 (citation omitted). Wallace also holds that "a court has jurisdiction to consider whether the Commission violated the Constitution." Id. at 1552. To determine whether we have jurisdiction, we must determine whether Roberts' challenge of the Parole Commission's decision-making process involves these limited areas.
 
 III. DETERMINING JURISDICTION
 
 7
 Roberts alleges that the Parole Commission violated its regulations and the Constitution--specifically the due process and equal protection clauses of the Fifth and Fourteenth Amendments--in making its judgment as to the "nature and circumstances of [her] offense." In considering Roberts' claims, we must take care that the limited exceptions in Wallace do not swallow the rule. Petitioners unhappy with discretionary parole decisions cannot circumvent the Parole Act and obtain judicial review simply by labeling their claims as constitutional or "extra-discretionary." Of course, we must also be true to Wallace's careful preservation of judicial review for legitimate constitutional or "extra-discretionary" claims.
 
 
 8
 Wallace therefore requires a threshold inquiry to determine jurisdiction. Ordinarily, where a jurisdictional issue is separable from the merits of a case, the court may determine jurisdiction by the standards of a Rule 12(b)(1) motion to dismiss for lack of jurisdiction. In such a situation, the district court is:
 
 
 9
 free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. In such circumstances, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."
 
 
 10
 Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir.1983) (quoting Thornhill Publishing Co. v. General Telephone & Electronics Corp., 594 F.2d 730, 733 (9th Cir.1979)).
 
 
 11
 The relatively expansive standards of a 12(b)(1) motion are not appropriate for determining jurisdiction in a case like this, where issues of jurisdiction and substance are intertwined. A court may not resolve genuinely disputed facts where "the question of jurisdiction is dependent on the resolution of factual issues going to the merits." Augustine, 704 F.2d at 1077; accord Sun Valley Gasoline, Inc. v. Ernst Enterprises, 711 F.2d 138, 139 (9th Cir.1983). In such a case, the district court assumes the truth of allegations in a complaint or habeas petition, unless controverted by undisputed facts in the record. (Of course, a court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.), cert. denied, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981).) Dismissal is then appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); see also Franklin v. State of Oregon, 662 F.2d 1337, 1343 (9th Cir.1981). This standard, "often cited in Rule 12(b)(6) motions, ... is equally applicable in motions challenging subject matter jurisdiction when such jurisdiction may be contingent upon factual matters in dispute." Calhoun v. United States, 475 F.Supp. 1, 3 (S.D.Cal.1977), aff'd and adopted 604 F.2d 647 (9th Cir.1979) (per curiam), cert. denied, 444 U.S. 1078, 100 S.Ct. 1029, 62 L.Ed.2d 761 (1980).
 
 
 12
 A limited threshold inquiry of this sort is consistent with our view that "[j]urisdictional dismissals in cases premised on federal-question jurisdiction are exceptional, and must satisfy the requirements specified in Bell v. Hood." Sun Valley Gasoline, 711 F.2d at 140. In Bell v. Hood, the Supreme Court held that such dismissals are permitted "where the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous." Bell v. Hood, 327 U.S. 678, 682-83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) (implied right of action under the Fourth and Fifth Amendments stated a claim over which the court had jurisdiction). We have used this "immaterial and insubstantial" standard in cases challenging decisions of the Veteran's Administration, over which we also have very limited jurisdiction. See Demarest v. United States, 718 F.2d 964, 966 (9th Cir.1983) (reversing the district court's jurisdictional dismissal where plaintiff's constitutional claim was not "patently without merit"), cert. denied, 466 U.S. 950, 104 S.Ct. 2150, 80 L.Ed.2d 536 (1984).
 
 
 13
 If a district court cannot determine jurisdiction on the basis of a threshold inquiry analogous to a 12(b)(6) motion, the court may assume jurisdiction and go on to determine the relevant jurisdictional facts "on either a motion going to the merits or at trial." Augustine, 704 F.2d at 1077; see also Thornhill Publishing Co., 594 F.2d at 734. This is the preferred course in our circuit for securities fraud cases where federal jurisdiction depends on whether disputed interests--which are central to the merits of the action--meet the statutory definition of a "security." See Black v. Payne, 591 F.2d 83, 88 n. 1 (9th Cir.), cert. denied, 444 U.S. 867, 100 S.Ct. 139, 62 L.Ed.2d 90 (1979); McConnell v. Frank Howard Allen & Co., 574 F.Supp. 781, 784 (N.D.Cal.1983). Taking jurisdiction was also held to be appropriate in an antitrust case, where dealing in interstate commerce was both an element of the substantive offense and a requirement for jurisdiction. See Thornhill Publishing Co., 594 F.2d at 733-34; cf. Berardinelli v. Castle & Cooke, Inc., 587 F.2d 37, 39 (9th Cir.1978) (affirming jurisdictional dismissal of antitrust action for failure to show dealing in interstate commerce where plaintiff conceded that jurisdiction and substantive facts were "separate and distinct").
 
 
 14
 Thus district courts in the future can deal with challenges to Parole Commission decision-making in several ways. A minimal inquiry at the outset may enable a court to determine that the challenge fails to state a claim even assuming the truth of all uncontroverted allegations. If such a minimal inquiry is not sufficient to determine jurisdiction, the court may assume jurisdiction and resolve the disputed facts that go to the merits, reserving a final decision on jurisdiction. Claims with merit will of course confer jurisdiction on the court and must be decided on the merits.
 
 IV. STANDARD OF REVIEW
 
 15
 We now apply the legal standards defined above in our review of the district court's denial of Roberts' claims. We review de novo the district court's denial of a habeas corpus petition. Reiger v. Christensen, 789 F.2d 1425, 1427 (9th Cir.1986). We do not apply Wallace retroactively, but if Wallace now denies us jurisdiction, that is an additional or alternative ground to affirm the decision of the district court. See City of Las Vegas v. Clark County, 755 F.2d 697, 701 (9th Cir.1985).
 
 V. THE AMOUNT OF HEROIN
 A. DUE PROCESS
 
 16
 Roberts first alleges a due process violation. She claims that the severity of her offense was based on an erroneous statement in her presentence report concerning the amount of heroin distributed by the conspiracy of which she was a part. For purposes of the parole decision, the severity of a drug offense such as Roberts' is determined by the amount of drugs involved in the offense. 28 C.F.R. Sec. 2:20 chapter nine, 901(a) (1986). The Parole Commission rated the severity of Roberts' offense as 8, the maximum category for drug offenses involving 3 or more kilograms of 100% pure heroin or its equivalent. Roberts alleges that the severity of her offense should have been rated as 6, the category for drug offenses involving from 5 to 999 grams of heroin.
 
 
 17
 Roberts argues that the severity of her offense should be based on the equivalent of 968.36 grams of pure heroin that she claims were involved in deals proved at trial. This is patently not how the Parole Commission determines the scale of drug offenses. "In some cases, the drugs actually confiscated may not accurately reflect the scale of the offense. For example, convincing evidence of negotiations and transactions of large quantities of drugs over a long period of time may be a more appropriate basis for rating the scale of the drug offense than weight/purity if the evidence shows that only one of many shipments was actually confiscated by the authorities." U.S. Parole Commission, Rules and Procedures Manual Sec. 2.20 chapter 9, note (c), at 48 (1985). The evidence before the Commission included a statement in the presentence report that the conspiracy of which Roberts was a part had distributed approximately 30 kilograms of heroin per month for up to five years. Also before the Commission was the judge's sentencing statement. It said that Roberts had been involved in a "serious drug ring extending over a number of states over a considerable period of time" and that she "knew about all the circumstances of the drug operation." Roberts bases her due process claim on the allegedly erroneous presentence report.
 
 
 18
 Whether Roberts' due process allegations state a claim depends in part on whether the Federal Parole Act creates a cognizable liberty interest. See Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The Supreme Court has held that some state parole statutes create an expectation of parole sufficient to create a liberty interest "entitled to some measure of constitutional protection." Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979). The Eighth Circuit has held that the Federal Parole Act creates "a substantial expectation of parole," perhaps more than that created by the Nebraska statute at issue in Greenholtz, but did not decide "what process is due in connection with the federal parole process." Evans v. Dillahunty, 662 F.2d 522, 526 (8th Cir.1981). The Seventh Circuit has held that the Federal Parole Act creates the same liberty interest as does the Nebraska statute. See Solomon v. Elsea, 676 F.2d 282, 285 (7th Cir.1982). The Fifth Circuit has held that the Federal Parole Act creates a lesser liberty interest than does the Nebraska statute. See Page v. United States Parole Commission, 651 F.2d 1083, 1086 (5th Cir.1981). We have held that "the federal parole statute creates, at most, a liberty interest entitled to no more protection of due process" than Greenholtz applied to Nebraska parole procedures. Reynolds v. McCall, 701 F.2d 810, 812 (9th Cir.1983); Bowles v. Tennant, 613 F.2d 776, 778 (9th Cir.1980).
 
 
 19
 We need not decide here what if any liberty interest the federal parole statute creates, because Roberts received all the process she would be due under Greenholtz. She had notice of the initial parole hearing and of the information--including the presentence report--that the Commission would consider. She had the opportunity to challenge that information at her initial hearing, and in her two subsequent administrative appeals. As the Seventh Circuit has said, such procedures reduce the risk of inaccuracy when the Parole Commission relies--as it may--on information such as a presentence report "that has not been proved in an adversary setting." Solomon v. Elsea, 676 F.2d at 288. Although Roberts alleges that the statement in the presentence report is "erroneous," it is supported by the trial judge's own sentencing statement. Roberts' own brief cites testimony from the trial on which the statement could have been based. Roberts argues that that testimony is not credible, but the credibility of evidence is just the sort of judgment that is absolutely committed to the discretion of the Parole Commission.
 
 
 20
 In short, Roberts' due process allegation is without merit. The district court properly dismissed for failure to state a claim. In light of Wallace, this failure to state a claim on a constitutional issue means that we lack jurisdiction. Thus, we affirm the decision of the district court on jurisdictional grounds. Of course, the district court, acting prior to Wallace, did not err in assuming that it had jurisdiction.
 
 
 21
 B. CLAIMS BASED ON COMMISSION REGULATIONS.
 
 
 22
 As part of her due process claim, Roberts argues that the Commission's reliance on an alleged error in the presentence report violated its own regulations. She argues that the information on which the Commission relied did not meet its preponderance of the evidence standard. See 28 C.F.R. Sec. 2.19(c) (1986). Roberts misunderstands this standard. It is not applied to each item of information, but to the evidence taken as a whole. If the Commission had acted beyond its discretion by considering information barred by statute or regulation, then we could review that aspect of its decision-making process. See Wallace, 802 F.2d at 1551. Where the Commission properly has evidence before it, however, the evaluation of that evidence is almost entirely at its discretion. Such an evaluation is a judgment as to the "nature and circumstances of the offense." Id. at 1549. There was considerable evidence properly before the Commission to support its judgment concerning the amount of heroin with which Roberts was involved. Its evaluation of the evidence was not so arbitrary as to be outside the boundary imposed by the preponderance of evidence standard. Therefore, we have no jurisdiction to review that judgment.
 
 
 23
 Roberts also alleges that the Commission violated its regulation requiring it to ascertain the sources and reliability of information upon which it bases its decisions. See 28 C.F.R. Sec. 2.19(c). The sources of information before the Commission were clear, and their reliability is again a matter we leave to the discretion of the Commission. See Wallace, 802 F.2d at 1551.
 
 VI. DISPARITY WITH CO-DEFENDANTS
 
 24
 Roberts' second claim is that the Parole Commission violated her rights to due process and equal protection by giving her co-defendants a lower severity rating than she received. Convicted on the same conspiracy count, as well as on counts on which Roberts was not convicted, all three co-defendants received severity ratings of 6. Roberts received a rating of 8. Roberts' contention of disparate treatment is based on her argument that "the Parole Commission guidelines call for the same severity rating to be given to the same conspiracy offense." The district court dismissed this claim, ruling that Roberts had failed to state an equal protection or due process claim.
 
 
 25
 In alleging that she received a higher severity rating for "the same conspiracy offense," Roberts misunderstands the Parole Commission's guidelines for evaluating the severity of an offense. The "offense behavior" rated by Commission is not the same as the count on which a prisoner was convicted. As the district court properly held, the Commission is not limited to evidence adduced at trial in determining the severity rating. See 18 U.S.C. Sec. 4207 (1982); 28 C.F.R. Sec. 2.19. Nor is the Commission required to find that each co-conspirator was involved with the same amount of heroin. Any participant in a conspiracy may be equally culpable as a matter of law. The parole inquiry into offense severity is much more factual, however, and focuses on the "actual offense behavior" of the individual prisoner. See U.S. Parole Commission, Rules and Procedures Manual Sec. 2.20-04 at 71 (1985). The Commission must therefore determine what amounts of heroin each co-conspirator was actually involved with, and whether that involvement was "peripheral" or managerial. See C.F.R. Sec. 2.20. The Commission determined that all four co-defendants had "managerial" or "proprietary" roles in the drug operation.[1] The Commission also determined that different co-defendants were involved with different amounts of heroin. Both determinations were entirely within the discretion of the Parole Commission.
 
 
 26
 The district court properly dismissed Roberts' claims as being without merit. As with Roberts' first due process allegation, this failure to state a constitutional claim means that we lack jurisdiction. In light of Wallace, we affirm this decision, too, on jurisdictional grounds.
 
 
 27
 VII. "NON-PERIPHERAL OFFENDER"
 
 
 28
 The third claim in Roberts' habeas petition is that the Parole Commission violated due process by erroneously attributing to Roberts a managerial role in the drug operation. If the Commission had found that Roberts played only a peripheral role in the offense, her parole release date could have been considerably earlier. The severity rating for a drug offense involving 3 or more kilograms of pure heroin is reduced from 8 to 6 if the prisoner has a peripheral role. See 28 C.F.R. Sec. 2.20 chapter 9, subchapter A 901(c).
 
 
 29
 Roberts challenges the Commission's determination of her managerial role on two grounds: (1) the Commission relied on an unconstitutional presumption, and (2) there was insufficient evidence to support the determination.
 
 A. THE PRESUMPTION
 
 30
 Roberts alleges that the Parole Commission relied on an unconstitutional presumption in determining that Roberts played a managerial or proprietary role, not a peripheral role, in the conspiracy. The Commission's guidelines define a "peripheral role" in drug offenses as "conduct such as that of a person hired as a deckhand on a marijuana boat, a person hired to help offload marijuana, a person with no special skills hired as a courier of drugs on a commercial airline flight, or a person hired as a chauffeur in a drug transaction. This definition does not include persons with decision-making or supervisory authority, persons with relevant special skills ... or persons who finance such operations." 28 C.F.R. Sec. 2.20 chapter 13, subchapter B (1986). Roberts argues that an internal regulation applying this definition created an impermissible presumption: "A proprietary or managerial role is presumed unless the Commission has sufficient credible information to establish otherwise." U.S. Parole Commission, Training Aid 83-002 (Jan. 1, 1983).[2] Roberts also argues that this regulation is invalid because it was not promulgated in accordance with the requirements of the Administrative Procedure Act.
 
 
 31
 The Commission made a specific finding that Roberts played an "integral part" in the drug conspiracy. There is no evidence in the record that the Commission relied on any presumption in making this finding. The presentence report, upon which the Commission is entitled to rely, contains evidence supporting the determination of a managerial role. The evidence Roberts offers to challenge this determination was available to the sentencing judge and to the Parole Commission. (How the Commission weighed this evidence is almost completely at its discretion and is the subject of Roberts' second ground for challenging the determination. See discussion below.) Because the Commission did not rely on the challenged presumption, we need not decide the constitutionality of the presumption or the propriety of its promulgation. Roberts' claims on these grounds are without merit.
 
 B. INSUFFICIENT EVIDENCE
 
 32
 Roberts' second ground for challenging the Commission's determination of her "managerial" role is that there was insufficient evidence to support the determination. As we have already indicated, Wallace limits our review of decision-making by the Parole Commission. Determining whether a prisoner played a peripheral or non-peripheral role in his or her offense is a judgment about the nature of the offense that is committed to the discretion of the Commission. See Wallace, 802 F.2d at 1549-50. In the absence of a valid constitutional claim, we have jurisdiction to review this judgment only if the Parole Commission acted outside its statutory discretion. If the Commission made this judgment arbitrarily, in violation of its preponderance-of-the-evidence rule, we would have jurisdiction to review that judgment. See id. at 1551. There was considerable evidence in the record to support the Commission's finding that Roberts played an "integral part" in the drug conspiracy. The Commission's determination of her "managerial" role was entirely within the range of its discretion to weigh the evidence and is therefore not reviewable. We affirm the district court's dismissal of Roberts' third claim and affirm the court's denial of her habeas corpus petition.
 
 
 33
 AFFIRMED.
 
 
 
 *
 Honorable J. Spencer Letts, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 The government is therefore incorrect in arguing that Roberts' managerial role is what differentiated her from her co-defendants
 
 
 [2]
 The Parole Commission's more recent training manual rephrases this "presumption": "Do not presume that an offender's role is peripheral. If an affirmative finding can be made, using the preponderance of the evidence standard, that the offender had a peripheral role in the offense, then the appropriate lower severity rating shall be selected. If no affirmative finding of a peripheral role can be made, then the higher severity rating shall be selected." U.S. Parole Commission, Rules and Procedures Manual Sec. 2.20 chapter 13, subchapter B, at 58 (Nov. 4, 1985)