ORGANIZATION FOR THE ADVANCEMENT OF MINORITIES WITH DISABILITIES SUING ON BEHALF OF ITS MEMBERS; and David Singletary, an individual, Plaintiffs,

v.

The BRICK OVEN RESTAURANT, et al., Defendants.

No. 05–CV–1224IEGBLM.

United States District Court, S.D. California.

Sept. 15, 2005.

---

David C. Wakefield, Pinnock and Wakefield, San Diego, CA, for Plaintiffs.

David Warren Peters, Lawyers Against Lawsuit Abuse, William A. Adams, Norton Adams and Downey, San Diego, CA, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

[Doc. No. 5.]

GONZALEZ, Chief Judge.

Presently before the Court is the motion of defendants Barney Scardino and Mary Scardino (collectively "defendants") to dismiss the complaint for lack of subject matter jurisdiction.[1] For the following rea-

---

1. On August 31, 2005, defendants Alreza Mahmood Toradi, Edith Mahmood Torabi, and the Brick Oven Restaurant joined in de-

sons, the Court grants in part and denies in part defendants' motion.

## BACKGROUND

### A. Factual Background

Plaintiff David Singletary uses a wheelchair for mobility because he is a paraplegic and unable to walk. (David Singletary Declaration ISO Opp. ¶ 3.) Defendants, through the Barney L. & Mary L. Scardino Trust, own the real property located at 915 S. Escondido Boulevard, Escondido, California 92025. (Compl. ¶ 3.) Defendants' real property houses The Brick Oven Restaurant (the "restaurant").[2] *Id.*

On July 7, 2004, Singletary patronized the restaurant. (Compl. ¶ 9.) As a result of Singletary's disability, he found it difficult to utilize the goods and services the restaurant offered. Singletary complains that the restaurant did not comply with the Americans with Disabilities Act of 1990 ("ADA") Guidelines for Buildings and Facilities. *Id.* at 10. Singletary claims to have personally encountered various access barriers. Specifically, Singletary alleges to have experienced access barriers in the parking lot, at the front entrance doors, in the restaurant itself, and in the men's restroom. *Id.* at 11–14. Singletary notified his attorney, David Wakefield, about the ADA violations he experienced at the restaurant. In response, Wakefield hired a consulting firm to confirm the existence of accessibility problems. (David Wakefield Declaration ISO Opp. ¶ 2.) The consultant identified at least fourteen ADA violations in addition to those Singletary personally experienced. (Compl. ¶ 15.)

Defendants have an eighteen year old grandson with cerebral palsy who is confined to a wheelchair and a disabled forty-three year old daughter. (Declaration of Barny Scardino ISO Motion ¶ 2.) Accordingly, defendants maintained the restaurant so that there were no real or actual barriers to entry. *Id.* For example, at the time of Singletary's alleged visit, the restaurant had two disabled parking spaces, an eight foot wide marked accessible pathway, a level path of travel from the parking spaces into the restaurant, a wide double door entry, accessible seating, accessible passageways and doors to the bathrooms, and accessibility upgrades in the bathroom. *Id.*

On January 18, 2005, Wakefield mailed a "Notice Letter" to defendants identifying the barriers of access Singletary personally experienced at the restaurant.[3] (Wakefield Decla. ¶ 5.) Wakefield did not receive a response. *Id.* Nevertheless, defendants are in the process of making modifications to the restaurant to ensure that it is in technical compliance with the ADA and California disability statutes. Defendants anticipate that said modifications will be completed by October 2005. (Scardino Decla. ¶ 2.)

Plaintiffs' complaint alleges: (1) violations of the ADA; (2) violations of California's Disabled Persons Act; and (3) violations of the California Unruh Civil Rights Act. Plaintiffs seek the following relief: (1) general damages; (2) damages of $4,000.00

---

fendants' motion to dismiss the complaint for lack of subject matter jurisdiction.

**2.** Defendants are the former owners of The Brick Oven Italian Restaurant. In April 1999, they sold the business to defendant Alireza Mahmoodtorabi, but retained ownership of the real property. (Memo. ISO Motion at 3:7–14.)

**3.** Defendants state that they did not receive the "Notice Letter" because it was sent to the restaurant's owners and not the owners of the real property that houses the restaurant. (Declaration of Barney Scardino ISO Reply ¶ 1.)

pursuant to Cal. Civil Code § 52 for each and every offense of Cal. Civil Code § 51, Title 24 of the California Building Code, the ADA, and ADA Accessibility Guidelines; (3) injunctive relief, (4) attorneys' fees pursuant to 42 U.S.C. § 1988, 42 U.S.C. § 12205, and Cal. Civil Code § 55; and (5) treble damages pursuant to Cal. Civil Code §§ 52(a) and 54.3(a). (Compl. at 15–16.)

### B. Procedural Background

The Organization for the Advancement of Minorities with Disabilities ("OAMD") and Singletary ("plaintiffs"), filed the instant civil action on June 15, 2005.[4] (Doc. No. 1.) On July 28, 2005, defendant The Brick Oven Restaurant, defendant Mahmoodtorabi, and defendant Edith Mahmoodtorabi filed an answer to the complaint. (Doc. No. 3.) Defendants filed the instant motion to dismiss for lack of subject matter jurisdiction on August 4, 2005. (Doc. No. 5.) Plaintiffs filed an opposition on August 29, 2005, and defendants filed a reply on September 2, 2005. While oral argument was scheduled to be heard on September 12, 2005 before the Honorable Irma E. Gonzalez, the Court determined that oral argument was not necessary and took the matter under submission pursuant to Civil Local Rule 7.1(d)(1).

### DISCUSSION

### A. Legal Standards

#### 1. Fed.R.Civ.P. 12(b)(1)

██ Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. Of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Rule 12(b)(1) provides that a district court may dismiss a plaintiff's claim if the Court finds that it lacks subject matter jurisdiction to adjudicate the claim. FED. R. CIV. PROC. 12(b)(1). A motion to dismiss under Rule 12(b)(1) can be either "factual" or "facial." *Thornhill Pub. Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); 2 *Moore's Federal Practice* § 12.30 (2004). If the defendant brings a facial attack, arguing that the allegations in the complaint are insufficient to demonstrate the existence of jurisdiction, the Court's inquiry is much the same as when ruling on a motion to dismiss brought under Rule 12(b)(6). *Moore's Federal Practice* § 12.30. Specifically, the Court must assume that the factual allegations in the complaint are true and construe them in the light most favorable to the plaintiff. *Id.; Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir.2000).

██ Where a defendant brings a "facial attack," the court's decision is based on extrinsic evidence quite apart from the pleadings. *Gould*, 220 F.3d at 176. In ruling on a facial attack, a court can consider extrinsic evidence, and generally may weigh the evidence and determine the facts in order to satisfy itself as to its power to hear the case. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987). However, this standard does not apply to the resolution of jurisdiction questions when "issues of jurisdiction and substance are intertwined." *Id.*

Where federal question jurisdiction depends on facts that are also an essential element of the federal claim, the jurisdictional and factual issues are said to be intertwined. Normally, the question of jurisdiction and the merits of an action are considered intertwined where the same statute provides the basis for both the

---

**4.** Singletary has a rich history of litigating ADA claims in the Southern District of California. At last count, Singletary had brought no less than 178 cases under the ADA in this judicial district.

subject matter jurisdiction and the plaintiff's substantive claim for relief. *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir.2003). Where jurisdiction is intertwined with the merits, the court "assumes the truth of the allegations in a complaint...unless controverted by undisputed facts in the record." *Roberts*, 812 F.2d at 1177. Thus, "jurisdictional dismissals in cases premised on federal-question jurisdiction are exceptional," and must satisfy the requirements specified in *Bell v. Hood*, 327 U.S. 678, 682–83, 66 S.Ct. 773, 90 L.Ed. 939, (1946). *Id.* In *Bell v. Hood*, the Supreme Court held that such dismissals are permitted "where the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous." 327 U.S. at 682–83, 66 S.Ct. 773.

Accordingly, a court should not resolve disputed facts where the question of jurisdiction is dependent on the resolution of the factual issues going to the merits. *Roberts*, 812 F.2d at 1177. Where there are disputed facts, the court shall apply the Fed.R.Civ.P. 56 "summary judgment standard," i.e. the moving party must establish that there are no material facts in dispute and that he or she is entitled to prevail as a matter of law. *Id.*

### 2. Supplemental Jurisdiction Under 28 U.S.C. § 1367

Under 28 U.S.C. § 1367, where a district court has original jurisdiction over a claim, it also "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. The Ninth Circuit mandates that the exercise of supplemental jurisdiction unless it is prohibited by section 1367(b), or unless one of the exceptions in section 1367(c) applies. *Executive Software N. Am., Inc. v. United States Dist. Ct. for the Cent. Dist. of Cal.*, 24 F.3d 1545, 1555–56 (9th Cir.1994). Thus, "unless a court properly invokes a § 1367(c) category in exercising its discretion to decline to entertain pendent claims, supplemental jurisdiction must be asserted." *Id.* at 1556. Under section 1367(c) a court my decline to exercise supplemental jurisdiction over a state claim if:

(1) the claim raises a novel or complex issue of State law;

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

(3) the district court has dismissed all claims over which it has original jurisdiction; or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

### B. Analysis

#### 1. Subject Matter Jurisdiction

Standing is a jurisdictional limitation; it is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Thus, where a plaintiff lacks standing to sue, the court lacks jurisdiction over the civil action.

In order to establish and maintain standing to bring suit, a plaintiff bears the burden of showing: (1) injury-in-fact, or the invasion of a legally protected interest, that is both (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and conduct complained of; and (3) a likelihood that a favorable decision will redress the wrong. *Id.*

■ In the context of the ADA's standing requirement for injunctive relief, a plaintiff must allege that a public accommodation has discriminated against him and that there is a "real or immediate threat that the [public accommodation] will again subject [him] to discrimination." *Bird v. Lewis & Clark College*, 303 F.3d 1015, 1019 (9th Cir.2002). This can be done by a plaintiff showing that he has encountered (or has knowledge of) barriers at a place of public accommodation and he intends to return to the public accommodation in the future. *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1137–1138 (9th Cir.2002).

■ In the case at bar, Singletary's complaint alleges that he suffered an actual injury because he visited the restaurant and defendants' discriminated against him by failing to provide full and equal access to their goods and services in violation of 42 U.S.C. § 12182(a). Moreover, Singletary declares he intends to return to the restaurant in the immediate future as he is frequently in the vicinity of the restaurant, but is deterred from returning to the restaurant because of his knowledge of the access problems that currently exist there. (Singletary's Decla. ¶ 5.) These allegations meet Singletary's burden of alleging actual or imminent injury for purposes of standing.[5]

Singletary also satisfies the second and third standing elements. Each requires only a brief discussion. The second standing element requires that Singletary's injury be fairly traceable to defendants' conduct. *Lujan*, 504 U.S. at 590, 112 S.Ct. 2130. Subsection (a) of section 12182 provides that the ADA's prohibitions against discrimination apply to "any person who

---

5. Defendants erroneously assert that they are entitled to an evidentiary hearing at which Singletary has the burden of proving that: (1) Singletary is disabled; (2) that he intended to use defendants' business for a legal reason independent of access litigation; (3) that he visited, or was deterred from visiting, defendants' business; (4) that a barrier prevented or interfered with his access to defendants' goods and services; and (5) that there is a real and immediate threat that he will again be prevented or deterred from using defendants' goods or services. As discussed above, where the basis for a district court's jurisdiction is intertwined with the substantive relief sought, the court "assumes the truth of the allegations in a complaint...unless controverted by undisputed facts in the record." *Roberts*, 812 F.2d at 1177. The basis for this Court's jurisdiction is intertwined with the basis for plaintiffs' substantive claims because both are based on the ADA. Accordingly, defendants are not entitled to an evidentiary hearing.

Here, there are only undisputed facts, therefore, the Court must assume the allegations of the complaint to be true. *Id.* However, at successive stages in the litigation, Singletary may be required to submit additional evidence in order to support his standing.

Lastly, it is unclear when, if ever, Singletary would be required to prove that he intended to use defendants' business for a legal reason independent of access litigation. A court in the Central District of California addressed this exact issue:

[Plaintiff's] motivation for visiting Arby's again is not relevant to the legal issue before the Court. What is critical to the Court's inquiry is whether he has alleged he suffered discrimination and because of his intention to return, will suffer discrimination again in the future. This Court agrees with the District Court's observation in *Molski v. Price*: "[t]he Court can find no authority that suggests that, in order to have standing to assert an ADA Title III claim for injunctive relief, a plaintiff must possess an intention to return to the inaccessible public accommodation that is not motivated in any way by advancing his litigation against that public accommodation." Indeed, even when a plaintiff has visited a public accommodation for the purpose of "surveying which buildings were or were not accessible to him in his wheelchair," a District Court has found the standing elements satisfied.

*Molski v. Arby's Huntington Beach*, 359 F.Supp.2d 938, 947–48 (C.D.Cal.2005).

owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). The ADA's express terms hold a landlord liable for noncompliance. *Botosan v. Paul McNally Realty,* 216 F.3d 827, 832–834 (9th Cir.2000). Singletary's complaint alleges that defendants own the real property that houses the restaurant, and that their actions discriminated against him by failing to provide full access to the restaurant. (Compl.¶ 3.) Accordingly, Singletary's complaint establishes the second element of standing, causation, because it alleges that defendants' own the real property that houses the restaurant which discriminated against him.

Lastly, Singletary must show that the requested relief is available to redress his injury. *Lujan,* 504 U.S. at 559, 112 S.Ct. 2130. Singletary seeks injunctive relief for his claims arising under the ADA. (Compl. at 15.) Under the ADA, injunctive relief is available to "any person who is being subjected to discrimination on the basis of disability" or who has "reasonable grounds for believing that such person is about to be subjected to discrimination." [6] 42 U.S.C. § 12188(a)(1). As discussed above, Singletary has sufficiently alleged that defendants' conduct constituted past, and presents potential future, ADA violations. Therefore, Singletary's prayer for injunctive relief is available under the ADA.

Singletary has established standing to seek injunctive relief at this stage of his case. If Singletary's allegations are true, he has suffered, and continues to suffer, an injury due to defendants' conduct, and he is threatened with continued harm absent injunctive relief. Accordingly, defendants' motion to dismiss for lack of subject matter jurisdiction is denied.

### a. Associational Standing

■ Defendants do not explicitly challenge OAMD's standing to sue. Nevertheless, the Court finds that OAMD has standing to sue under the doctrine of associational standing. Associational standing requires that (1) at least one member has standing, in his own right, to present a claim asserted by the association; (2) the interests sought to be protected are germane to the association's purpose; and (3) neither the claim asserted nor the relief requested requires that the members participate individually in the suit. *Hunt v. Wash. State Apple Adver., Comm'n,* 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

■ OAMD meets the requirements for associational standing as set forth in *Hunt.* First, as discussed above, Singletary, a member of OAMD, has standing to sue in his individual capacity. (Compl.¶ 8.) Second, the interests sought to be protected are germane to OAMD's purpose. OAMD is an advocate for the civil rights of minorities with disabilities. (Compl.¶ 7.) The case at bar seeks to ensure that disabled persons have unencumbered access to public accommodations. Thus, the interests sought to be protected in this civil action are germane to OAMD's purpose. Lastly, neither the claims asserted nor the requested relief require the participation of the individual members. While Singletary, in his individual capacity, seeks damages, OAMD solely prays for the injunctive relief available under the ADA and California Accessibility statutes. Injunctive relief does not require the participation of OAMD's individual members. Accordingly, OAMD satisfies the test for

---

6. 42 U.S.C. § 12188(a), the ADA's enforcement section, incorporates the remedies available under 42 U.S.C. § 2000a–3(a). Section 2000a–3(a) provides for injunctive relief to aggrieved persons.

associational standing at this point in the litigation.

### 2. Supplemental Jurisdiction Under Section 1367(c)

Defendants move this Court to decline to exercise supplemental jurisdiction over plaintiffs' state law claims. Plaintiffs' California Unruh Act and California Disabled Persons Act ("DPA") claims unquestionably arise out of the same common nucleus of operative facts that make up their ADA claims. All three acts generally protect individuals with disabilities from discrimination by public accommodations because of their disability. Here, the facts alleged in the complaint give rise to claims under the ADA, the California Unruh Act, and the California DPA. Accordingly, the Court's exercise of supplemental jurisdiction is initially proper. *See* 28 U.S.C. § 1367(a) ("in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

However, even where supplemental jurisdiction is proper under section 1367(a), a court may decline to exercise supplemental jurisdiction if one of the four subsections of section 1367(c) is met. *See* 28 U.S.C. § 1367(c). Defendants argue that this Court should decline to exercise supplemental jurisdiction because: (1) the Unruh Act and California DPA raise novel or complex issues of state law; (2) the Unruh Act and California DPA claims substantial-ly predominate over plaintiffs' ADA claims; and (3) other compelling reasons for declining supplemental jurisdiction exist.[7] (Memo. ISO Motion at 10:4–15.) Plaintiffs respond that: (1) there are no compelling reasons for declining supplemental jurisdiction; (2) the state law claims do not raise novel or complex issues of state law; and (3) the state law claims do not substantially predominate over plaintiffs' ADA claims.

In order to appreciate the similarities and differences between the ADA, the Unruh Act, and the California DPA, a brief overview of each is necessary.

#### a. The ADA

Plaintiffs' sole federal claim is an alleged violation of Title III of the ADA. *See* 42 U.S.C. § 12182. Title III prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by an y person who owns, leases, (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). A restaurant is a "public accommodation" under Title III. 42 U.S.C. § 12181(7)(B).

 In order to set forth a prima facie case under Title III of the ADA, a plaintiff must prove that: (1) he has a disability; (2) defendant's business is a place of public accommodation; (3) and he was denied full and equal treatment because of his disability. *Mayberry v. Von Valtier*, 843 F.Supp. 1160, 1166 (E.D.Mich. 1994). Plaintiff must additionally show

---

7. Defendants rely almost exclusively on two unpublished opinions from the Central District of California. *Molski v. EOS Estate Winery*, 03–CV–0588–GAF (C.D.Cal. July 14, 2005); *Molski v. Hitching Post 1*, 04–CV–1077–SVW (C.D.Cal. May 24, 2005.) Both cases present factual scenarios and procedural postures eerily similar to the case at bar. While not binding on this Court, the Court finds the reasoning employed in each opinion persuasive and hereby incorporates it as its own.

that he was denied access under circumstances which give rise to the inference that such denial was based solely on his disability. *Id.* To succeed on a ADA claim of discrimination on account of one's disability due to an architectural barrier, the plaintiff must also prove that: (1) the existing facility at the defendant's place of business presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable. *Gilbert v. Eckerd Drugs,* 1998 WL 388567, at *1, 1998 U.S. Dist. LEXIS 10529, at *2 (E.D.La. July 8, 1998); *see* 42 U.S.C. § 12182(b)(2)(A)(iv).

The only remedy available under Title III is injunctive relief. 42 U.S.C. § 12188(a)(1). "Damages are not recoverable." *Wander v. Kaus,* 304 F.3d 856, 858 (9th Cir.2002).

#### b. The Unruh Act

The Unruh Act provides that "[a]ll persons within the jurisdiction of [California] are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ.Code § 51(b). In 1992, the Unruh Act was amended to provide that "a violation of the right of any individual under the [ADA] shall also constitute a violation of this section." Cal. Civ.Code § 51(f).

In almost all circumstances, the Unruh Act prohibits only intentional discrimination. *See Harris v. Capital Growth Investors XIV,* 52 Cal.3d 1142, 1175, 278 Cal.Rptr. 614, 805 P.2d 873 (1991) However, pursuant to § 51(f), a violation of an individual's rights under the ADA "shall also constitute a violation of [the Unruh Act]." Thus, an Unruh Act claim based on an ADA claim not requiring proof of intentional discrimination likewise does not require such proof. *See Presta v. Peninsula Corridor Joint Powers Bd.,* 16 F.Supp.2d 1134, 1136 (N.D.Cal.1998) ("[I]f Plaintiff need not demonstrate discriminatory intent to prove a claim under the ADA, she similarly need not show such intent to prevail under the Unruh Act.").

The Unruh Act, unlike the ADA, allows for the recovery of monetary damages. The Unruh Act allows a plaintiff to recover statutory damages in the amount of three times the amount of actual damages, but in no case less than $4,000.00 "for each and every offense." Cal. Civ.Code § 52(a). Both the Ninth Circuit and the California Supreme Court hold that California Civil Code § 52 authorizes an award of the minimum statutory damages amount regardless of a plaintiff's actual damages. *Botosan,* 216 F.3d 827; *Koire v. Metro Car Wash,* 40 Cal.3d 24, 33, 219 Cal.Rptr. 133, 707 P.2d 195 (1985).

#### c. The California DPA

Under the California DPA, "[i]ndividuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, medical facilities, including hospitals, clinics, and physicians' offices, public facilities and other public places." Cal. Civ.Code § 54(a). It further provides, "[i]ndividuals with disabilities shall be entitled to full and equal access, as other members of the general public, to accommodations...places of accommodation, amusement, or resort, and other places to which the general public is invited..." Cal. Civ.Code § 54.1(a)(1). As with the Unruh Act, a violation under the ADA also constitutes a violation of the California DPA. Cal. Civ.Code § 54.1(d). Similarly, a showing of intent to discriminate is not required to obtain damages under the Cal-

ifornia DPA. *Donald v. Cafe Royale, Inc.,* 218 Cal.App.3d 168, 177–180, 266 Cal.Rptr. 804 (1990).

■ The California DPA provides for monetary damages in the amount of three times the actual damages, but in no case less than $1,000.00, "for each offense." Cal. Civ.Code § 54.3. Furthermore, as with the Unruh Act, a plaintiff need not prove actual damages in order to recover the minimum statutory amount; he only must establish that he was denied equal access on a particular occasion. *Donald,* 218 Cal.App.3d at 180–181, 183, 266 Cal. Rptr. 804. However, a plaintiff may not recover under both the California DPA and the Unruh Act. Cal. Civ.Code § 54.3(c) ("A person may not be held liable for damages pursuant to both this section and Section 52[, the Unruh Act,] for the same act or failure to act.").

#### i. Plaintiffs' State Law Claims Raise Novel and Complex State Law Issues

The Unruh Act provides that damages are awarded "for each and every offense," while the California DPA provides damages "for each offense." *See* Cal. Civ.Code §§ 52(a) and 54.3(a). While these remedial provisions do not conflict, "they are ill defined." *Molski,* at 15:11. The clauses do not conflict because the California DPA

precludes recovery under both the Unruh Act and the DPA, but they are nevertheless ambiguous. In fact, two district courts came to conflicting conclusions when dealing with this exact language. *Compare Botosan v. Fitzhugh,* 13 F.Supp.2d 1047 (S.D.Cal.1998) (permitting recovery for daily damages) *with Doran v. Embassy Suites Hotel,* 2002 WL 1968166, at *4–6 (N.D. Cal. Aug. 26, 2002) (finding that daily damages are not permitted). Furthermore, there is no California state law case directly on point.[8]

■ Since there is no direct guidance from the California courts and two district courts have reached different conclusions, the Court finds that the remedial provisions of the Unruh Act and the California DPA present novel and complex issues of unresolved state law. Ultimately, this is a matter of state law, which is better left to the California courts. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Needless decisions of state law should be avoided as a matter of comity.").[9]

#### ii. Plaintiffs' State Law Claims Substantially Predominate Over Their Federal Law Claims

Defendants argue that Plaintiffs' state law claims substantially predominate over

---

8. Plaintiffs assert that one reason there is no case law on point is because the issue of damages is "so mundane and commonplace that the parties and the courts have not seen the need to further challenge the basis for the damages decisions." (Memo. ISO Opp. at 23:11–14.) The Court respectfully disagrees. The predominant reason that new law is not created in this arena is because plaintiffs, like plaintiffs here, use the ADA, and its California counterparts, as a tools of extortion. Rarely, if ever, do ADA cases filed in the federal court proceed past the discovery stage because experienced ADA plaintiffs have honed their litigation strategies so that it is usually cheaper and more efficient for defendants to settle than fight these, often meritless, cases. For

example, not one of Singletary's 178 ADA cases filed in this district have been decided on the merits. Without exception, each has been dismissed with prejudice following a settlement by the parties. (Information gathered from the Southern District of California's Civil Docket, of which the Court takes judicial notice.)

9. In *Molski v. Hitching Post I Rest.,* a case involving the same claims presented here, the Honorable Stephen V. Wilson found that the state claims presented novel and complex issues of law because the Unruh Act's and California DPA's remedial provisions created an ambiguity. (*See Molski* at 15:10–26.)

their federal law claims because they allow for an award of monetary damages. (Memo. ISO Motion at 10.) Plaintiffs respond that the state and federal claims are virtually identical, and thus, the Court should exercise pendant jurisdiction over the state claims. (Memo. ISO Opp. at 24:4–5.)

In *Gibbs*, the Supreme Court indicated that where "state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals." 383 U.S. at 726, 86 S.Ct. 1130. While *Gibbs* is a pre-section 1367(c) case, the Ninth Circuit has indicated that *Gibbs* informs a section 1367(c) analysis. *Acri v. Varian Assocs. Inc.*, 114 F.3d 999, 1001 (9th Cir.1997).

Again, the Court finds the reasoning employed by Judge Wilson persuasive and adopts it as its own. Plaintiffs correctly assert that the burdens of proof and standards of liability under the ADA and the Unruh Act are the same where the Unruh Act claim is predicated on an ADA violation. However, the statutory damages available to Singletary under the Unruh Act substantially predominate over the injunctive relief available under the ADA. Singletary seeks $4,000.00 in damages for each and every offense of the Unruh Act.[10] (Compl. at 15.) Plaintiff alleges at least fourteen distinct violations. If he proves all fourteen, he would be entitled to an award of $56,000. In sharp contrast, Singletary is only entitled to injunctive relief and attorneys' fees under the ADA. Given the disparity in available remedies, the Court finds that Singletary's state claims

substantially predominate over his lone federal claim.

### iii. Compelling Reasons for Declining Jurisdiction Exist

Section 1367(c)(4) allows a district court to refuse to exercise supplemental jurisdiction over state law claims if "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). While not specifically raised by defendants, a court may raise this issue *sua sponte*.

Of the 178 ADA cases Singletary has filed in the Southern District of California, not one has ever been decided on the merits.[11] Singletary's approach is identical to that of a vexatious litigant in the Central District of California: "sue, settle, and move on to the next suit." *Molski v. Mandarin Touch Rest.*, 347 F.Supp.2d 860, 866 (C.D.Cal.2004). It is unclear what advantage Singletary gains by being in federal court. His sole remedy under the ADA, injunctive relief, is also available under the Unruh Act and the California DPA. As far as the Court can tell, Singletary's sole purpose for attaching an ADA claim is to get his state claims into federal court. This is forum-shopping plain and simple, and discouraging forum-shopping is a legitimate goal for the federal courts. *Hanna v. Plumer*, 380 U.S. 460, 466, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Serious questions of forum shopping necessarily arise "[t]o the extent that the federal claim is used as a bootstrap, merely to facilitate the choice of a federal forum over the pendent state claim." *Hamilton v. Roth*, 624 F.2d 1204, 1212 (3d Cir.1980).

---

**10.** Only Singletary, not the OAMD, prays for monetary damages. (Memo. ISO Opp. at 16:23–24.)

**11.** Singletary filed one ADA case in 1997, thirteen in 1999, twelve in 2000, ten in 2001, thirteen in 2002, twenty-nine in 2003, ninety in 2004, and ten in 2005.

Here, Singletary's forum-shopping necessarily implicates considerations of comity. His actions deprive the California state courts of the ability to interpret and settle unsettled issues of state law. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130.

Because a legitimate function of the federal courts is to discourage forum shopping and California courts should interpret California law, the Court finds that compelling reasons exist to decline supplemental jurisdiction over plaintiffs' state law claims.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part. At this early stage in the litigation, plaintiffs' have standing to bring their ADA claims. Therefore, defendants' motion to dismiss the complaint for lack of subject matter jurisdiction is **DENIED**. However, the court declines to exercise supplemental jurisdiction over plaintiffs' state law claims. Accordingly, plaintiffs' state law claims are **DISMISSED** without prejudice.

**IT IS SO ORDERED.**