**ACCESS NOW, INC.; and Pamela Kitchens as parent and legal guardian of Tiffany Masterson, Plaintiffs,**

v.

**TOWN OF JASPER, Tennessee, Defendant.**

**No. 1:02–CV–059.**

United States District Court, E.D. Tennessee, At Chattanooga.

June 26, 2003.

Gene R. Zweben—Schwartz, Sqeben & Associates Stuart, Fl, Charles B. Coleman, Jr., Chattanooga, TN, for Plaintiffs.

Nathan D. Rowell—Watson & Hollow, PLC, Knoxville, TN, for Defendant.

### *MEMORANDUM OPINION*

EDGAR, Chief Judge.

Plaintiffs Access Now, Inc. ("Access Now") and Pamela Kitchens ("Kitchens"), acting as parent and legal guardian on behalf of her minor daughter, Tiffany Masterson ("Tiffany"), bring this action for declaratory judgment and injunctive relief against defendant Town of Jasper, Tennessee ("Town") pursuant to Title II of the

Americans With Disabilities Act, 42 U.S.C. §§ 12131–12150 ("ADA"). Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability.

This case arises out of a dispute about whether Kitchens and Tiffany can keep a miniature horse at their residence in the Town. The Town denied Kitchens' application for a permit to keep the horse. Plaintiffs contend Tiffany is a qualified individual with a disability under the ADA, and that she needs the horse to assist her as a service animal. Plaintiffs complain that the Town has violated Title II of the ADA by refusing to provide a reasonable modification to its municipal ordinance to allow Tiffany to keep and utilize the horse as a service animal at her residence on property owned by her mother, Kitchens.

A trial was held on June 17, 2003, without a jury. After considering the evidence and reviewing the entire record, the Court concludes that the Town is entitled to have judgment entered in its favor. Plaintiffs have not met their burden of proving essential elements of their ADA claim by a preponderance of the evidence. The Court **FINDS**:

(1) Tiffany is not disabled within the meaning of the ADA;

(2) the horse is not a service animal;

(3) Tiffany does not need to use the horse as a service animal; [1] and

(4) the Town has not discriminated against Tiffany by reason of disability.

In sum, the Town has not discriminated against Tiffany in violation of Title II of the ADA.

## I. *Facts*

The Court makes the following findings of fact.

Kitchens and her daughter, Tiffany, reside at 1021 Dennis Avenue, Jasper, Tennessee. Their house is located in a subdivision and residential neighborhood. There are other persons who live in very close proximity to Kitchens' residence. There are neighbors across the street and on lots immediately adjoining Kitchens' property.

Tiffany was born on January 2, 1994, and is currently nine years old. Tiffany suffers from the congenital birth defect, spina bifida. She has a form of spina bifida known as cervical myelomeningocele which is an open spine in the area of her neck. Tiffany also has hydrocephalus, commonly known as water on the brain. Her physicians have surgically implanted a shunt or tube to drain excess amounts of fluid surrounding her brain. Tiffany has a history of occasional grand mal seizures, but the seizures are being managed and controlled with medication. According to Kitchens, Tiffany suffered her last seizure in 1999. Tiffany is also bowel and bladder incontinent.

In about August 2000, Kitchens contacted the Make-a-Wish Foundation in an effort to grant Tiffany a special wish. Tiffany wished for a miniature horse. The Make-A-Wish Foundation began efforts to obtain a horse for Tiffany. In early October 2000, Kitchens applied to the Town for a permit to keep a miniature horse. The application was denied by the Town on October 17, 2000. The application was reviewed and investigated by Tim Graham ("Graham") who is the Town's chief of police and public health officer. During his review, Graham consulted with the Town's attorney, visited the neighborhood and talked with the other residents there (Kitchens' neighbors), and inspected the

---

**1.** The term "service animal" is defined in 28 C.F.R. § 36.104. That definition appears later in this opinion.

area where Kitchens proposed to keep the horse.

On October 17, 2000, Graham wrote a letter to Kitchens stating he had decided to deny the application due to Kitchens' close proximity to other Town residents, and the neighbors' health and safety concerns regarding the cleanliness and maintenance of the horse. At no time prior to October 17, 2000, did Kitchens inform Graham or the Town that she intended to utilize the horse as a service animal for Tiffany under the ADA. Graham's decision was not in any way based on Tiffany's physical condition. The Town's decision on October 17, 2000, to deny the permit was not made by reason of Tiffany's alleged disability. Consequently, the Make–A–Wish Foundation decided not to follow through with its plan to provide the horse.

A person in Chattanooga, Tennessee, heard the Make–A–Wish Foundation had changed its mind and he decided to provide a miniature horse to Tiffany as a surprise gift. This person acquired the horse from Dora McBay ("McBay") who, along with her husband, raises and trains small horses in a rural part of Marion County, Tennessee. On November 28, 2000, he went to Kitchens' residence without prior notice and delivered the horse to Tiffany.

The horse weighs approximately 140 pounds. Tiffany is slightly taller than the horse and she can place her hands or arms on the horse's back. Kitchens testified in her deposition that on a typical day the horse spends at least three hours inside her house with Tiffany.

Prior to the delivery of the horse on November 28, 2000, none of Tiffany's treating physicians had ever prescribed or recommended that Tiffany utilize a miniature horse as a service animal. When Tiffany received the horse on November 28, 2000, it was nothing more than a pet and companion for Tiffany. The horse was merely a domesticated animal for pleasure rather than a trained service animal for Tiffany under the ADA. There is no proof the horse had received prior training as a service animal for purposes of the ADA.

Despite the Town's previous denial of her application for the animal control permit, Kitchens kept the horse at her residence. The Town issued a citation to Kitchens for violating Jasper Municipal Code § 10–102. This municipal ordinance provides:

*Keeping near a residence or business restricted.* No person shall keep any animal or fowl enumerated in the preceding section within one thousand (1,000) feet of any residence, place of business, or public street without a permit from the health officer. The health officer shall issue a permit only when in his sound judgment the keeping of such an animal in a yard or building under the circumstances as set forth in the application for the permit will not injuriously affect the public health. A person keeping not more than two dogs and/or two cats shall not be required to obtain prior approval from the health officer; however, the keeping of such animals shall remain subject to all other terms and conditions of this chapter.

Kitchens violates the ordinance by keeping the horse at her residence. The horse stays in a small barn or shed behind the Kitchens' house, and Kitchens allows the horse to roam around her backyard which is enclosed by a chain-link fence. The barn and the horse are readily visible to Kitchens' neighbors and other persons passing by on the public street that runs in front of her home. The horse is being kept by Kitchens within one thousand feet of other residences and a public street which is prohibited by Jasper Municipal Code § 10–102.

The Jasper Municipal Court held a hearing and determined that Kitchens was in violation of Jasper Municipal Code § 10–102. The Municipal Court ordered Kitchens to remove the horse from her property. At no time during the judicial proceedings did Kitchens or any other person acting on Tiffany's behalf contend that the horse was being utilized as a service animal for Tiffany under the ADA.

Kitchens took an appeal to the Circuit Court of Marion County, Tennessee, where for the first time she alleged the horse is a service animal for Tiffany under the ADA. The case is styled *Town of Jasper, Tennessee vs. Pam Kitchens,* Circuit Court of Marion County, Case No. 14178. In the meantime, on January 22, 2001, Kitchens filed another application with the Town's health officer requesting a permit to keep the horse at her residence indefinitely under Title 10 of the Jasper Municipal Code. In the application, Kitchens describes the animal in question as a "miniature horse assistance horse—service animal (qualified)." The application further states the horse was to be maintained in a barn and kept inside 23 hours per day, then kept outside one hour per day on one-half acre fenced in by a chain link fence.

Plaintiffs contend they provided the Town with documents showing that Tiffany is disabled, and the horse is being utilized by Tiffany as a service animal under the ADA. Despite this new information, the Town did not issue a permit. The Town took no official action on the January 22, 2001 application. The Town neither granted nor denied this second application because it was embroiled in pending civil litigation with Kitchens in the Marion Circuit Court.

Edwin Z. Kelly, Jr. ("Kelly") is the Town's attorney. In mid-January 2001, Kelly went to Kitchens' residence where he observed Tiffany playing and walking without assistance from the horse or any other source. Kelly asked for medical documentation that the horse was a service animal. Plaintiffs have never provided this documentation. Kelly further observed that Kitchens seems more interested in the horse than was Tiffany.

On February 5, 2002, the Circuit Court of Marion County entered an order granting summary judgment in favor of the Town. The Circuit Court determined that the ADA was not an appropriate defense. Kitchens was declared guilty of violating Jasper Municipal Code § 10–102 and she was ordered to remove the horse from her property. Kitchens then brought this ADA suit in federal district court on March 1, 2002.

Plaintiffs contend Tiffany is substantially limited in three major life activities: walking, standing, and caring for herself. It is alleged that prior to Tiffany obtaining the horse on November 28, 2000:(1) she was weak and barely able to stand and walk; (2) she had poor balance and would sometimes fall down; and (3) she had such little physical endurance and stamina that Tiffany would quickly grow tired after walking only about ten steps and would require some assistance.

Kitchens has provided some training to the horse with help from McBay. Kitchens and McBay had no prior experience in training miniature horses to be service animals under the ADA. McBay is in the business of raising and training miniature horses to participate in horse shows and perform such activities as pulling carts. McBay raised and sold the horse now owned by Tiffany. Generally, McBay trains all of her horses to be comfortable and at ease around people.

Kitchens has done most of the training with a little supervision from McBay. The horse was fitted with a harness and halter with a lead rope. Kitchens taught the horse to understand the voice commands

of "whoa" and "walk," and to follow directions on moving left or right. If Tiffany was sitting down, she could grasp the horse's harness with her hands and use it to pull herself up into a standing position. Kitchens testified the horse does not need the harness anymore. Tiffany can hold onto the horse's mane or back to guide it.

Plaintiffs contend that Kitchens trained the horse to assist Tiffany in standing, walking, maintaining her balance, and picking up unspecified objects off the floor or ground for Tiffany. If Tiffany is walking and becomes tired, say the plaintiffs, Tiffany places her arm on the horse or leans some of her body weight onto the horse so it can assist her in standing and walking. However, the plaintiffs say Tiffany only uses the horse in this manner inside Kitchens' house and in the backyard. Plaintiffs contend that Tiffany's use of the horse has enabled her to become stronger and improve her ability to stand and walk.

The Court finds the preponderance of the evidence does not support the plaintiffs' ADA claim. The Court concludes that Tiffany does not have a disability as defined by the ADA and she does not have a genuine need to use the horse as a service animal. Tiffany is not substantially limited in the major life activities of standing, walking, and caring for herself. The horse does not perform tasks that are necessary to assist Tiffany in overcoming, managing, or dealing with a disability. The testimony by Kitchens and Fred Shotz to the contrary is not credible in the face of the other overwhelming evidence. Plaintiffs greatly exaggerate the purported need of Tiffany to use the horse as a service animal under the ADA.

The Court has reviewed Tiffany's medical records. There is no medical evidence showing that Tiffany is substantially limited in her major life activities of standing and walking. All of the medical proof establishes that Tiffany is capable of standing and walking without assistance. Tiffany ambulates or walks within a reasonably normal range of activity. The deposition testimony of Tiffany's own treating physician, Dr. Timothy Strait, does not support the plaintiffs' ADA claim. Dr. Strait has never recommended, and would not recommend at this time, that Tiffany use the horse as a service animal. Dr. Strait flatly states that Tiffany does not need a service animal. The expert medical opinion of Dr. Strait is accorded great weight by this Court.

The preponderance of the credible, nonmedical evidence also shows that Tiffany has no significant difficulty in standing or walking by herself. Tiffany does not use crutches, a wheelchair, or any other handicap aid or mechanical device to assist her in walking and standing when she is away from the Kitchens' residence. Tiffany attends special education classes at Jasper elementary school where she walks between classes and plays on the school playground without assistance from a service animal. At her home, Tiffany regularly walks, runs, swims, jumps, bounces a ball while standing, and plays with other children in her neighborhood without assistance from the horse. Tiffany often plays in front of the Kitchens' house while the horse remains in the barn or backyard. The Town has introduced videotapes of Tiffany at her residence showing that she has the physical ability and stamina to engage in these activities without assistance. In reviewing the videotapes, the Court observes that Tiffany has no difficulty standing or walking normally by herself, and she does not actually need to use the horse as a service animal. The videotapes are highly probative evidence that Tiffany is not substantially limited in her standing and walking.

Gerald White ("White"), an elected member of the Town's Board of Aldermen, lives in a house across the street from the Kitchens' residence. White has lived there since 1990. The horse and barn located in Kitchens' backyard are visible to White from his front porch. White has observed Tiffany both before and after she obtained the horse. White testifies that the horse has not helped Tiffany to gain strength. White has not seen Tiffany using or playing with the horse. It is White's testimony that Tiffany can stand, walk, run, jump, ride a bicycle and swim by herself without assistance. Tiffany has engaged in these activities and played around the neighborhood both before and after she obtained the horse. The Court finds White's testimony to be credible and entirely consistent with Tiffany's medical records.

## II.  *Analysis*

### A.  *Title II of ADA*

42 U.S.C. § 12132 defines what constitutes prohibited discrimination by a public entity under Title II of the ADA. Section 12132 provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." The Town is a public entity. The term "public entity" means any local government. 42 U.S.C. § 12131(1).

Under Title II of the ADA, the term "qualified individual with a disability" is defined in relevant part as meaning an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity. 42 U.S.C. § 12131(2).

The term "disability" under the ADA is defined in pertinent part as meaning a physical or mental impairment that substantially limits one or more of an individual's major life activities. 42 U.S.C. § 12102(2)(A); 29 C.F.R. § 1630.2(g)(1).

29 C.F.R. § 1630.2(h)(1) provides:

(h) Physical or mental impairment means:

(1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or

(2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

The phrase "major life activities" means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, and learning. 29 C.F.R. § 1630.2(i); *Penny v. United Parcel Service*, 128 F.3d 408, 414 (6th Cir. 1997).

The term "substantially limits" means either: (1) an individual is unable to perform a major life activity that the average person in the general population can perform; or (2) an individual is significantly restricted as to the condition, manner or duration under which the individual can perform a major life activity as compared to the condition, manner or duration under which the average person in the population can perform that same major life activity. In deciding whether an individual is substantially limited in a major life activity, courts consider the nature and severity of the impairment; the duration or expected duration of the impairment; and the permanent or long term impact, or expected permanent or long term impact of the

impairment. 29 C.F.R. § 1630.2(j); *Penny*, 128 F.3d at 414.

## B. *Count I of the Complaint: Denial of Permit and Reasonable Modification Claim*

In Count I of their complaint, the plaintiffs claim the Town failed to provide a reasonable modification to Tiffany in violation of Title II of the ADA. Plaintiffs contend Tiffany is a qualified individual with a disability who needs and utilizes the horse as a service animal. It is alleged that the horse qualifies as a service animal under the ADA, 28 C.F.R. § 36.104.

Plaintiffs cite 28 C.F.R. § 35.130(b)(7) which provides: "A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." Plaintiffs contend that issuing a permit for Kitchens and Tiffany to keep the horse at their residence is a reasonable modification to the municipal ordinance and the Town's policy of regulating animals. Plaintiffs assert that issuing the permit will not cost the Town any money, will not alter the regulation of animals within the Town's limits, and will not place any person's health or safety at risk.

Plaintiffs demand the following relief: (1) a declaratory judgment that the policy, program, or service administered by the Town (municipal ordinance governing animal control) violates Title II of the ADA; (2) an injunction ordering the Town to issue a permit to Kitchens allowing her to keep the horse as a service animal for Tiffany on Kitchens' property; (3) an injunction requiring the Town to evaluate and neutralize its policies and procedures towards persons with disabilities; and (4)

an award of attorney's fees, costs, and other expenses to the plaintiffs.

To prevail on their ADA claim, the plaintiffs must prove all of the following essential elements by a preponderance of the evidence: (1) Tiffany is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2) and the accompanying federal administrative regulations cited *supra;* (2) the horse is a service animal; (3) Tiffany needs to use the horse as a service animal under the ADA; and (4) the Town discriminated against Tiffany in violation of 42 U.S.C. § 12132 by reason of her disability. *McPherson v. Michigan High School Athletic Ass'n,* 119 F.3d 453, 459–60 (6th Cir. 1997); *Sandison v. Mich. High School Athletic Ass'n,* 64 F.3d 1026, 1036 (6th Cir.1995).

## C. *Disability*

■ Plaintiffs have not proved that Tiffany has a disability under the ADA. Tiffany has significant health problems but this does not necessarily mean she is disabled for purposes of invoking the ADA. Although the Court is sympathetic to Tiffany's health problems, the Court is required to follow and correctly apply the ADA. The Court cannot base its decision on feelings of sympathy and concern for Tiffany that are contrary to a proper application of the ADA.

To establish that Tiffany has a disability under the ADA, the plaintiffs must prove she has a physical or mental impairment that substantially limits one or more of Tiffany's major life activities. 42 U.S.C. § 12102(2)(A). This the plaintiffs have failed to do. Plaintiffs contend Tiffany is substantially limited in the major life activities of walking, standing, and caring for herself. However, the evidence clearly shows that Tiffany is not substantially limited in any of these major life activities.

Therefore, she is not disabled under the terms of the ADA

### D. *Service Animal*

Plaintiffs have not proved the horse is a service animal under the ADA.

> Service animal means any guide dog, signal dog, or other animal individually trained to do work or perform tasks *for the benefit of an individual with a disability,* including, but not limited to, guiding individuals with impaired vision, alerting individuals with impaired hearing to intruders or sounds, providing minimal protection or rescue work, pulling a wheelchair, or fetching dropped items.

28 C.F.R. § 36.104 (Emphasis supplied).

To be classified as a service animal under 28 C.F.R. § 36.104, the horse must be trained to work for the benefit of a disabled individual. The federal regulations set minimum requirements for service animals. There is no requirement as to the specific amount or type of training that a service animal must undergo. There is no requirement as to the amount or type of work or assistance that a service animal must provide for the benefit of a disabled person. *Green v. Housing Authority of Clackamas County,* 994 F.Supp. 1253, 1256 (D.Or.1998).

■ The Court concludes that the horse is not a service animal because Tiffany is not disabled within the meaning of the ADA. The horse does not perform any tasks for the benefit of an individual with a disability. Plaintiffs seek to demonstrate the horse is a service animal by presenting evidence that it has had some training to be well behaved around Tiffany and follow basic commands. However, the issue of whether the horse is a service animal does not turn on the type and amount of training. The bottom line is that the horse is not a service animal under the ADA because it does not assist and perform tasks for the benefit of Tiffany to help her overcome or deal with an ADA disability.

The horse is a pet and companion for Tiffany, but it is not a service animal under the ADA. Tiffany does not need to utilize the horse as a service animal. Tiffany can adequately stand, balance herself, walk, and care for herself entirely without any assistance from the horse. One fact which clearly demonstrates Tiffany does not need the horse as a service animal is that Tiffany does not utilize the horse when she is traveling, walking and moving around outside the confines of Kitchens' house and back yard. Plaintiffs make no contention that Tiffany needs the horse as a service animal when she goes to school or otherwise moves and travels beyond Kitchens' residence. Plaintiffs only argue that Tiffany uses the horse at her residence. If the horse was truly a necessary service animal, Tiffany would need to use it on a regular basis in many other places away from Kitchens' residence.

### E. *Discrimination by Reason of Disability*

The final element the plaintiffs must prove is that the Town discriminated against Tiffany in violation of 42 U.S.C. § 12132 by reason of her disability. *McPherson,* 119 F.3d at 459–60; *Sandison,* 64 F.3d at 1036; *see also Smith v. Moorman,* 47 Fed.Appx. 755, 2002 WL 31182451 (6th Cir.2002); *Brown v. Osweia,* 181 F.3d 99 (Table, text as 1999 WL 283876 (6th Cir.1999)); *Weinreich v. Los Angeles County,* 114 F.3d 976, 978–79 (9th Cir.1997). There are two methods that allow the plaintiffs to prove the Town's actions have been taken because of Tiffany's alleged disability. Plaintiffs can either (1) offer evidence that Tiffany's disability was actually considered by the Town in making its decision to deny Kitchens' application for a permit to keep the

horse at her residence, or (2) show that the Town could have reasonably modified its animal control policy to accommodate Tiffany's disability, but the Town refused to do so. *McPherson,* 119 F.3d at 460.

The Court finds the plaintiffs have not proved that the Town discriminated against Tiffany by reason of a disability. Tiffany does not have a disability under the ADA. Plaintiffs do not offer any direct evidence of discrimination under the first method. Instead, the plaintiffs have selected the second method, and they seek to show that the Town could have reasonably modified its animal control policy in the municipal ordinance to accommodate Tiffany's alleged disability. It is not necessary to reach and decide the issue of whether the Town could have made a reasonable modification or what would have constituted a reasonable modification. The Court concludes the ADA does not require the Town to modify its policy and ordinance to accommodate Tiffany because the plaintiffs have not met their burden of proving that Tiffany has a disability under the ADA.

Accordingly, judgment will be entered in favor of defendant Town of Jasper and the plaintiffs' complaint will be dismissed with prejudice.

### JUDGMENT

In accordance with the memorandum opinion filed herewith, the Court GRANTS judgment in favor of defendant Town of Jasper, Tennessee, against the plaintiffs. The plaintiffs' complaint is **DISMISSED WITH PREJUDICE**. Defendant Town of Jasper shall recover its costs of this action pursuant to 42 U.S.C. § 12205, FED. R. CIV. P. 54(d)(1), and E.D. TN. LR 54.1.

If the prevailing party, defendant Town of Jasper, intends to seek an award of reasonable attorney's fees and other litigation expenses pursuant to 42 U.S.C. § 12205 and FED. R. CIV. P. 54(d)(2), the defendant shall file its motion within twenty (20) days from the date of entry of this judgment. Any motion for attorney's fees and litigation expenses shall be supported by a sworn affidavit itemizing the specific legal services and expenses, the amount of time expended by defense counsel, and counsel's hourly rate of compensation.

SO ORDERED.