**Al DAVIS, Plaintiff,**

v.

**Dale MA; Roscoe BK Restaurant, Inc.; Gloria Garduno; and Guadalupe Rojas, Defendants.**

**Case No. EDCV 10–01483 VAP (DTBx).**

United States District Court, C.D. California.

Jan. 24, 2012.

Glenn A. Murphy, Litigation & Advocacy Group, Moorpark, CA, for Plaintiff.

Courtney M. Coates, Courtney M. Coates Law Offices, Temecula, CA, for Defendants.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

VIRGINIA A. PHILLIPS, District Judge.

Before the Court is a Motion for Summary Judgment ("Motion") filed by Defendants Roscoe BK Restaurant, Inc., Dale Ma, Guadalupe Rojas, and Gloria Garduno (collectively "Defendants"). After considering the papers and arguments in support of, and in opposition to, the Motion, the Court GRANTS Defendants' Motion.

### I. PROCEDURAL HISTORY

On October 4, 2010, Plaintiff Al Davis ("Plaintiff") filed a complaint ("Complaint") alleging claims for: 1) violations of the Americans with Disabilities Act ("ADA"); 2) violations of the Unruh Civil Rights Act, Cal. Civ. Code § 51; and 3) intentional infliction of emotional distress. (Doc. No. 3.)

On December 16, 2010, Defendants filed a Motion to Strike Plaintiff's "SLAPP" claims, arguing Plaintiff's state law claims should be stricken because Plaintiff could not demonstrate a reasonable probability of success on the merits. (Doc. No. 9.) The Court denied the motion on January 31, 2011, finding Plaintiff's claims were not " 'cause[s] of action against [Defendants'] arising from any act of [Defendants] in furtherance of [Defendants'] right of petition or free speech under the United States or California Constitution.' " (Jan. 31 Order (Doc. No. 17) (quoting Cal. Civ. Proc. Code § 425.16).)

Defendants then filed a Motion to Strike Portions of the Complaint on March 1, 2011, moving to strike Paragraph 21 under Federal Rule of Civil Procedure 12(f). (Doc. No. 18.) Defendants argued Plaintiff's allegations of perjury, concealment, and collusion to obstruct justice were "scandalous," "impertinent," and "irrelevant matters," and requested the Court strike Paragraph 21 because it alleged privileged conduct under California Civil Code Section 47. (*Id.* at 6.) The Court agreed that Paragraph 21 involved privileged communications under California Civil Code Section 47(b) and granted Defendants' motion. (Apr. 8 Order (Doc. No. 21) at 6 (citing *Kimes v. Stone*, 84 F.3d 1121, 1126–27 (9th Cir.1996)) (noting that "[f]or well over a century, communications with 'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as section 47(b) ... [T]he privilege is now held applicable to any communication ... and all torts except malicious prosecution" (citation omitted)).)

On November 28, 2011, Defendants filed this Motion. (Doc. No. 39.) In support of their Motion, Defendants attached the following documents:

1) Declaration of Dale Ma ("Ma Declaration") (Doc. No. 40);

2) Declaration of Laura Hintz ("Hintz Declaration") (Doc. No. 41);

3) Declaration of Courtney M. Coates ("Coates Declaration") (Doc. No. 42);

4) Request for Judicial Notice (Doc. No. 43);

5) Declaration of Dr. Charanpreet Boparai ("Boparai Declaration") (Doc. No. 44);

6) Declaration of Peter Cossar ("Cossar Declaration") (Doc. No. 45);

7) Declaration of Sally Montrucchio ("Montrucchio Declaration") (Doc. No. 46); and

8) Statement of Uncontroverted Facts ("SUF") (Doc. No. 47).

On December 12, 2011, Plaintiff filed an ex parte application to reopen discovery

and continue Defendants' Motion for 90 days. (Doc. No. 50.) Defendants filed their opposition on December 13, 2011. (Doc. No. 51.) The Court denied Plaintiff's application on December 16, 2011, and rescheduled the hearing on this Motion from January 9, 2012, to January 23, 2012. (Doc. No. 52.)

Plaintiff filed his Opposition to the Motion on January 3, 2012, and attached the following documents:

1) Declaration of Al Davis ("Davis Declaration");

2) Declaration of Herman Clavon ("Clavon Declaration"); and

3) Statement of Genuine Issues ("SGI"). (Doc. No. 53).

Defendants filed their Reply on January 9, 2012, (Doc. No. 58), along with their evidentiary objections (Doc. No. 59).

## II. LEGAL STANDARD

A court shall grant a motion for summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir.1998) (citing *Anderson*, 477 U.S. at 256–57, 106 S.Ct. 2505); *Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.*, 707 F.2d 1030, 1033 (9th Cir.1983). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case. *Id.; Horphag Research Ltd. v. Garcia*, 475 F.3d 1029 (9th Cir.2007),

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. Fed.R.Civ.P. 56(c); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

*See also* William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, *Federal Civil Procedure Before Trial* § 14:144. A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007); *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir.1991); *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987).

## III. FACTS

### A. Preliminary Evidentiary Issues

Plaintiff filed an Objection to Defendants' Evidence, challenging specific state-

ments in the declarations of Dale Ma, Laura Hintz, and Sally Montruccio. (Doc. No. 56.) As the Court does not rely on the statements in Mr. Ma's declaration to which Plaintiff objects, the Court only addresses Plaintiff's objections to Ms. Hintz's and Ms. Montruccio's declarations.

Plaintiff argues that both Ms. Montruccio and Ms. Hintz are lay witnesses with no legal training, who therefore cannot give their opinions on what constitutes a service animal under California or federal law. (*Id.* at 4–6.) The Court overrules Plaintiff's objections to the declarations of Ms. Hintz and Ms. Montruccio. Ms. Hintz provides a thorough description of her job as the Field Services Representative of the Department of Animal Care and Services for the City of Rancho Cucamonga, and the Court finds her qualified to describe the Department's procedures for licensing dogs. (*See* Hintz Decl. ¶¶ 1–2.) To the extent Plaintiff intended his objection as one for lack of foundation, the objection lacks merit.

Ms. Montruccio also details her expertise in training service dogs, and provides a thorough explanation for her conclusion that the puppy was not a trained service animal. There is sufficient foundation for her opinion. (*See* Montruccio Decl. ¶¶ 4–24.)

## B. Uncontroverted Facts

In his SGI, Plaintiff attempts to dispute 34 of Defendants' 35 alleged uncontroverted facts.[1] To the extent those facts are not mentioned, the Court has not relied on them in reaching its decision.[2]

The following material facts are supported adequately by admissible evidence and are uncontroverted. They are "admitted to exist without controversy" for the purposes of Defendants' Motion. *See* L.R. 56–3 (facts not "controverted by declaration or other written evidence" are assumed to exist without controversy); Fed. R.Civ.P. 56(e)(2) (where a party fails to address another party's assertion of fact properly, the court may "consider the fact undisputed for purposes of the motion").

On December 28, 2008, Plaintiff entered Defendants' Burger King restaurant on Roscoe Boulevard, Van Nuys, California ("restaurant") with a 13 week old puppy Plaintiff was training to be a service dog ("the puppy"). (Compl. ¶ 12; Davis Decl. ¶ 4.) On the entrance to the restaurant were posted two signs stating: "No animals except for service animals"; and "No animals except as allowed by state law." (Ma Decl. ¶ 5, Ex. 3; Davis Decl. ¶ 5.)

When Plaintiff attempted to order food, a restaurant staff member asked Plaintiff to leave because of the restaurant's "no dogs" policy. (Davis Decl. ¶ 5.) Plaintiff asked to speak with the manager and explained to the staff member that the puppy was a service dog in training. (Davis Dep. 17:5–8, 18:10–15.)

The manager, Defendant Gloria Garduno, repeated that dogs were not allowed and pointed to the sign on the outside of the restaurant. (Davis Dep. 17:17–19.) She also asked to see the puppy's "ID." (Garduno Dep. 40:9–10.) When Plaintiff said he did not have one, she told him he could not stay in the restaurant, but could

---

1. The majority of Plaintiff's purported disputes do not address the facts or sources of evidence Defendants present, but instead, propound legal arguments as to the merits of the case. (*See generally* SGI.) As these arguments do not address whether the proffered facts are disputed, the Court accords them no significance.

2. As the Court does not rely on any of the exhibits attached to Defendants' Request for Judicial Notice, the Court does not address the evidentiary issues raised concerning the exhibits' admissibility.

either take his order "to-go," or could leave the puppy outside.[3] (Garduno Dep. 17:10–17.)

After leaving the restaurant, Plaintiff retrieved a camera from his car and took pictures of the sign. (Davis Dep. 17: 21–22.)

### 1. Plaintiff's Disability

Plaintiff has a degenerative back disability, which limits his ability to walk and sleep. (Davis Decl. ¶ 2.) Plaintiff's back problems date from 1988 when he suffered a herniated disc and underwent surgery. (*Id.*) In 2004, he dislocated the "T–10 through S–1 vertebrae disks [sic]" in his back while working as a physician's assistant. (*Id.*) His doctors recommended he undergo another back surgery, but Plaintiff worried surgery would not ameliorate his pain. (*Id.*) Since then, Plaintiff's back pain has persisted, though the pain varies-some days he is relatively pain free, while other days he cannot get out of bed. (*Id.*)

### 2. Plaintiff's Puppy

Plaintiff's puppy is a Great Dane that was approximately 13 weeks old at the time of the alleged denial of accommodation. (Coates Decl. ¶ 3, Ex. 6; Hintz Decl.

¶ 4.) Plaintiff acquired the puppy in November 2008. (Montrucchio Decl. ¶ 10.) The puppy received a service dog tag from the City of Rancho Cucamonga, California on December 2, 2008, and a general dog license on February 29, 2009. (Hintz Decl. ¶ 7.)

### 3. Puppy's Training

When Plaintiff entered the Burger King restaurant on December 28, 2008, the puppy was not fully trained as a service animal, but had some "basic obedience" training.[4] (Montrucchio Decl. ¶¶ 10, 23.) When Defendants allegedly denied him accommodation, Plaintiff was attempting to train the puppy to assist him with walking and balancing inside restaurants. (Montrucchio Decl. ¶ 10; Davis Decl. ¶ 4.)

As a young dog, the puppy still had a "playful" streak.[5] (Montrucchio Decl. ¶ 10.) Additionally, the puppy was too young to have complete control over its bladder and bowels for extended training periods. (Montrucchio Decl. ¶ 22.) Thus, there was a risk that as a young dog that was not fully trained, the puppy could defecate or urinate in public places while being trained. (*Id.*)

The puppy was not a trained service dog in December 2008, "under any circumstances, according to minimal industry standards and practices."[6] (Montrucchio

---

**3.** Plaintiff claimed during his deposition that, after retrieving a camera from his car, he returned to the restaurant and asked to speak to the manager again. (Davis Dep. 17:22–23.) Plaintiff did not recall the entire conversation he had with the manager, but remembered the manager would not allow him to stay in the restaurant with the puppy. (Davis Dep. 18:4–6.) Ms. Garduno, however, testified in her deposition that Plaintiff never returned to the restaurant. (Garduno Dep. 49:25.) This dispute is irrelevant to the Court's decision and therefore the Court need not resolve it.

**4.** The parties do not dispute that the puppy received a service dog tag prior to the alleged denial of accommodation. Plaintiff submits as an exhibit a picture of a dog tag with the words "Rancho Cucamonga Service Dog

009," and asserts this is a "close up of just Barack's service dog tag." (Davis Decl. ¶ 7, Ex. 2.) Defendants also present testimony that the Department of Animal Care and Services for the City of Rancho Cucamonga issued a service dog tag to the puppy prior to the alleged denial of accommodation. (Hintz Decl. ¶ 7.)

**5.** Defendants' service dog expert, Ms. Montrucchio, also testified that the puppy would have been a "safety risk" at 13 weeks. (Montrucchio Decl. ¶ 18.) Ms. Montrucchio is a Field Service Representative of the Department of Animal Care and Services for the City of Rancho Cucamonga. (*Id.* ¶ 2.)

**6.** Defendants claim Plaintiff has refused to allow Defendants' expert, Ms. Montrucchio,

Decl. ¶ 9; Davis Decl. ¶ 4; Davis Dep. 13:15–22.)

Plaintiff is not a certified service dog trainer based on industry standards.[7] (Montrucchio Decl. ¶¶ 10, 23–24.) Defendants' service dog expert stated that, based on her assessment, Plaintiff was not competent to train the puppy as a balance service dog. (*Id.*) Plaintiff also admitted during his deposition that he could not recall when he read books to learn about training service dogs, nor the names of the books he read.[8] (Davis Dep. 16:11–19.)

### 4. Puppy's Vaccinations

Plaintiff's puppy was vaccinated for rabies on December 31, 2008, three days after the alleged denial of accommodation by Defendants' restaurant, at the Banfield Pet Hospital in Rancho Cucamonga, California.[9] (*See* Boparai Decl. ¶ 3; Cossar Decl. ¶ 2.)

Although the puppy was issued a service dog tag on December 2, 2008, the puppy did not obtain a dog license until February 29, 2009, after being vaccinated for rabies. (Hintz Decl. ¶ 7.)

### C. Disputed Facts

The parties dispute whether the puppy was able to ameliorate Plaintiff's disability, and specifically, whether the puppy could assist Plaintiff with balance and mobility.[10] (*See* Davis Decl. ¶ 4; Mot. at 13.) According to Defendants' service dog expert, the young puppy was not large enough to assist Plaintiff with walking or balancing. (Montrucchio Decl. ¶ 23.) In fact, Ms. Montrucchio testified that Plaintiff could have injured himself and the puppy if he had leaned on the puppy for balance when the puppy was just 13 weeks old. (*Id.*)

Defendants also submit Plaintiff's deposition testimony, in which Plaintiff states the puppy served as "a reminder" not to put his complete body weight on his left side. (Davis Dep. 15:10–12.) When Defendants' counsel asked if the puppy could physically assist Plaintiff in walking, Plaintiff replied "no." (Davis Dep. 15:17–20.) Plaintiff also replied "no," when Defendants' counsel asked whether the puppy could physically assist him in balancing. (Davis Dep. 15:21–24.)

Plaintiff, however, submits a letter and two prescription notes written by Dr. Harding G. Young, which state that Plaintiff uses a service animal due to his "severe back pain/disc degeneration." (Davis Decl. Ex. 1.) Plaintiff also claims in his declaration that he obtained the puppy "to per-

---

to examine the puppy, in violation of Rule 26, and include as an exhibit a letter from Plaintiff's counsel arguing an expert examination of the puppy would not be admissible evidence. (Coates Decl. ¶ 10, Ex. 12.) Nevertheless, Ms. Montrucchio provides her expert assessment—based on the facts available—that the puppy is not a trained service animal. (Montrucchio Decl. ¶ 9.) As Plaintiff does not claim the puppy is a trained service animal, but admits the puppy was still "in training," the Court does not find this fact to be in dispute. (Davis Dep. 5:11–12.)

7. Plaintiff claims there are no federal or state certification requirements for trainers of service dogs. (Davis Decl. ¶ 8 (citing *Green v. Housing Auth.*, 994 F.Supp. 1253, 1256 (D.Or. 1998)).) Even if correct, Plaintiff does not provide any expert testimony or declarations to support his claim that he was qualified under industry standards to train the puppy to be a service dog.

8. After much questioning, Plaintiff did claim to have read the book "Service Dog Training," though he could not recall the page length of the book. (Davis Dep. 16:22–25.)

9. Plaintiff claims to dispute this fact, but does not provide any conflicting evidence. (*See* SIG ¶ 14.) Rather, Plaintiff claims this fact is "irrelevant" and that he was "in total compliance with the law." *Id.*

10. As service dogs, Great Danes primarily serve the function of assisting a disabled person in balancing. (Montrucchio Decl. ¶ 24.)

sonally train [the puppy] to assist [Plaintiff] with [his] degenerative spine-walking disability." (*Id.* ¶ 8.)

Defendants note in their Reply, however, that Plaintiff's doctor has not submitted a sworn declaration identifying Plaintiff's disability and describing how a service animal could ameliorate the condition. (Reply at 10.)

Defendants also argue that Plaintiff's declaration describing how the dog assisted him is "uncorroborated and self-serving" testimony and therefore does not raise a genuine issue of fact. (Reply at 10 (citing *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir.1996); *Johnson v. Washington Metro. Transit Auth.*, 883 F.2d 125, 128 (D.C.Cir.1989)).)

## IV. DISCUSSION

### A. ADA and Unruh Civil Rights Act Claims

■ Title III of the ADA establishes that "no individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ." 42 U.S.C. § 12182(a).[11]

To prevail on a Title III discrimination claim, the plaintiff must show that:

(1) She is disabled within the meaning of the ADA;

(2) The defendant is a private entity that owns, leases, or operates a place of public accommodation; and

(3) The plaintiff was denied public accommodations by the defendant because of her disability.

42 U.S.C. § 12182(a)-(b); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007); *see also Org. for Advancement of Minorities with Disabilities v. Brick Oven Rest.*, 406 F.Supp.2d 1120, 1128 (S.D.Cal. 2005).

Here, Plaintiff claims he has a disability within the meaning of the ADA, and that Defendants failed to accommodate Plaintiff when they refused to allow him to remain in the restaurant with his puppy. (Compl. ¶ 12; Davis Decl. ¶¶ 2–5.)

The parties do not dispute that Defendants are private entities that own and operate a place of public accommodation. (Compl. ¶ 7; Answer (Doc. No. 22) ¶ 7; *see also* 28 C.F.R. § 36.104 (restaurant or other establishment serving food or drink constitutes place of public accommodation). Nor do the parties dispute that Defendants' manager, Ms. Garduno, asked Plaintiff to leave the restaurant on December 28, 2008, because he was accompanied by the puppy. (Davis Decl. ¶ 5; Garduno Dep. 5–12.)

Thus, the only elements of Plaintiff's ADA claim at issue here are whether Plaintiff had a qualifying disability, whether the puppy was a "service animal" within the meaning of the ADA, and whether any defenses apply. The Court addresses each in turn.

---

**11.** The Unruh Civil Rights Act provides:

All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, or medical condition are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ.Code § 51(b); *Goldman v. Standard Ins. Co.*, 341 F.3d 1023, 1026–27 (9th Cir. 2003).

As the Unruh Act has adopted the full expanse of the ADA's public accommodations provisions, the same standards of liability apply under both Acts. *Munson v. Del Taco Inc.*, 46 Cal.4th 661, 670, 94 Cal.Rptr.3d 685, 208 P.3d 623 (2009); Cal. Civ.Code § 51(f).

## 1. Qualifying Disability

To sustain a claim under the ADA Plaintiff must first demonstrate a qualifying disability. 42 U.S.C. § 12182(a). The ADA defines disability as:

(1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(2) a record of such impairment; or

(3) being regarded as having such impairment.

42 U.S.C. § 12102(2)(A)-(C).

The corresponding regulations specify further that a "physical or mental impairment" includes "any physiological disorder or condition." 29 C.F.R. § 1630.2(h)(1). Thus, the ADA protects a broad array of physical and mental impairments, including back disabilities. *Rood v. Umatilla Cnty.*, 526 F.Supp.2d. 1164, 1175 (D.Or. 2007) (back problems such as lumbosacral sacroiliac spondylosis, herniated disc, and degenerative disc disease could qualify as disability under ADA).

The federal regulations define "major life activity" to include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working; and the operation of a major bodily function." 29 C.F.R. § 1630.2(i)(1).

The federal regulations state that the terms "major" and "substantially limits" should not be interpreted strictly. 29 C.F.R. § 1630.2(i)(2), (j)(1). The primary focus of the ADA should not be whether an individual's disability substantially limits a major life activity, but rather, whether discrimination has occurred. 29 C.F.R. § 1630.2(j)(1)(iii).

Defendants argue that Plaintiff's injury does not substantially limit him. To support this, Defendants cite to the regulations' appendix, which states that "temporary, non-chronic impairments of short duration, with little or no long term or permanent impact, are usually not disabilities." (Mot. at 20 (citing 29 C.F.R. Part 1630 App., § 1630.2(j)).) Defendants do not, however, submit any facts demonstrating that Plaintiff's disability was temporary.[12] Defendants instead seem to argue that because Plaintiff stopped attending physical therapy and has admitted to taking walks, his physical condition fails to meet the ADA definition for a qualifying disability.[13]

Whether a person has a qualifying disability, however, does not depend on whether she attends physical therapy, nor must a plaintiff be completely unable to walk to demonstrate a qualifying ambulatory disability or back disability. *See* 29 C.F.R. § 1630.2.

■ To survive a summary judgment motion in an ADA case, "a plaintiff's testimony may suffice to establish a genuine

---

12. A condition which is chronic or merely in remission can still constitute a qualifying disability. 29 C.F.R. § 1630.2(j)(1)(vii). Thus, even if Plaintiff's disability resulted in variable degrees of impairment, he could still bring a claim under the ADA.

13. Defendants cite to a previous defense verdict against Plaintiff as evidence that Plaintiff does not have a qualifying disability, and request the Court to take judicial notice of the Order in that case. (*See* Requ. for Judicial Not. Ex. 17.) Whether Plaintiff suffered from a disability in February 2007, however, neither proves nor disproves Plaintiff suffered from a qualifying disability at the time of the instant alleged failure to accommodate in December 2008. Thus, while the previous defense verdict is noticeable, *see* Federal Rule of Evidence 201, and while the Court therefore grants the Request for Judicial Notice to the extent that Defendants attempt to assert issue preclusion here, the Court does not rely on this evidence in reaching its decision.

issue of material fact" regarding the impairment of a major life activity. *Head v. Glacier Nw., Inc.*, 413 F.3d 1053, 1059 (9th Cir.2005). At the same time, however, "conclusory declarations are insufficient to raise a question of material fact." *Id.*

Here, Plaintiff explains the history of his back condition, describes the pain he experiences as a result of the condition, and states in his declaration: "Due to my degenerative back problems I have difficult[y] walking and sleeping." (Davis Decl. ¶ 2.) Plaintiff also provides a letter from his doctor, which states that Plaintiff "suffers from [a] severe back disability," and a prescription note stating Plaintiff has "severe back pain/disc degeneration." (Davis Decl. Ex. 1.) While Plaintiff's declaration borders on conclusory, the doctor's note tilts the balance in favor of finding a triable issue of fact exists here regarding Plaintiff's disability.

Thus, viewing the facts in a light most favorable to Plaintiff, a reasonable jury may conclude from this evidence that Plaintiff's symptoms significantly restricted him from at least one major life activity such as sleeping or walking.[14]

### 2. Service Animal

Defendants argue that Plaintiff's dog did not qualify as a "service animal" under the ADA because the dog was not trained to work for Plaintiff to help ameliorate his ADA disability. (Mot. at 11.) Defendants also maintain that the ADA only covers licensed service animals, which excludes an "untrained puppy" with no skills to "differentiate him from an ordinary, well-mannered pet." (*Id.* at 13.)

Plaintiff argues federal law does not specify what kind of training a dog must complete in order to qualify as a service dog. (Opp'n at 6.) In the absence of federal guidance, Plaintiff contends, California law applies. (Opp'n at 5 (citing Cal. Civ. Code § 54.2).)

Though the federal regulations do not create a federal certification process, the ADA's corresponding regulations specify that a service animal "means any dog that is individually trained to do work or perform tasks for the benefit of an individual with a disability, including a physical, sensory, psychiatric, intellectual, or other mental disability." 28 C.F.R. § 36.104; *see also* 42 U.S.C. § 12101 et seq.; *Miller v. Ladd*, No. CV 08–05595 NJV, 2010 WL 2867808, at *4 (N.D.Cal. July 20, 2010) (citing *Vaughn v. Rent–A–Center, Inc.*, No. 2:06–cv–1027, 2009 WL 723166 at *10 (S.D.Ohio Mar. 16, 2009) (citing *Access Now, Inc. v. Town of Jasper, Tenn.*, 268 F.Supp.2d 973, 980 (E.D.Tenn.2003); *Bronk v. Ineichen*, 54 F.3d 425, 431 (7th Cir.1995))). Additionally, "the work or tasks performed by a service animal must be directly related to the individual's disability." 28 C.F.R. § 36.104; *see also Bronk*, 54 F.3d at 429.

To survive a motion for summary judgment, therefore, Plaintiff must show there is a triable issue of fact as to whether Plaintiff's puppy was "trained to work ... so as to help ameliorate" Plaintiff's back disability.[15] *See Davis v. Patel*, No. CV

---

**14.** In fact, Plaintiff need not demonstrate multiple impairments resulting from his physical disability to show the condition "substantially limits" a major life activity. Here, Plaintiff's inability to sleep could on its own establish Plaintiff has a qualifying disability under the ADA. *See* 29 C.F.R. § 1630.2(j)(1)(viii).

**15.** The Ninth Circuit has found that a private entity's "certified" service requirement for service dogs does not necessarily violate the ADA. In *Lentini v. California Center for the Arts,* the Ninth Circuit found that an art center's failure to accommodate a patron accompanied by a certified service dog violated the ADA. 370 F.3d 837 (9th Cir.2004). In finding the center did not reasonably accommodate the plaintiff, however, the court did not criticize or reject the center's policy requiring service animals to be "certified." Under that

10–6239 PSG, 2011 WL 1155553, at *4 (C.D.Cal. Mar. 28, 2011) (citing *Miller*, 2010 WL 2867808, at *4).

In *Davis v. Patel*, the court found a declaration averring that Plaintiff was "turned away 'supposedly because she had a licensed service dog with her'" did not create a triable issue of fact sufficient to survive Defendants' motion for summary judgment. The court reasoned that the affiant was not "qualified to expertly opine on ... whether [Plaintiff's] disability required a service dog." *Id.* at *5.

■ Here, drawing all justifiable inferences in Plaintiff's favor, the Court finds the record does not contain admissible evidence demonstrating that Plaintiff's puppy was a trained service animal able to ameliorate Plaintiff's disability.

First, Plaintiff fails to present evidence creating a triable issue of fact as to whether the puppy was a trained service animal. Rather, the uncontroverted facts show the 13 week old puppy was not fully trained as a service animal, and only had some "basic obedience" training. (Montrucchio Decl. ¶¶ 10, 23; Davis Decl. ¶ 4.) At the time of the incident, Plaintiff was still attempting to train the puppy to assist him with walking and balancing inside restaurants. (Montrucchio Decl. ¶ 10; Davis Decl. ¶¶ 4–5.)

The only evidence Plaintiff submits showing the puppy was a licensed service dog is a picture of the puppy's service dog tags. (Davis Decl. Ex. 2.) This does not establish, however, that the puppy was a properly trained service animal within the meaning of the ADA. Defendants' service dog expert testified that Rancho Cucamonga's service dog tags are given out based on an "honor system." (Hintz Decl. ¶ 9.) If a person fills out an affidavit stating the

dog is a "canine licensed as, to be qualified as, or identified as, a guide dog, signal dog, or service dog," then the city issues a service dog tag. (*Id.*) Though the City gave Plaintiff such a tag on December 2, 2008, the City did not ascertain whether the puppy was trained, nor whether Plaintiff was a qualified service dog trainer. (*Id.* ¶¶ 7–10.) In fact, the City rarely issues a service dog tag to a puppy less than four months old that has not received a rabies vaccination. (*Id.* ¶ 11.)

Defendants' expert also testified that working service dogs are required to be fully vaccinated. (Montrucchio Decl. ¶ 21.) As Plaintiff submits no expert testimony disputing this requirement, Plaintiff fails to create a triable issue of fact regarding the vaccination requirements for service dogs. Plaintiff also admits the puppy was not vaccinated for rabies at the time of the incident. (*See* Davis Decl. ¶ 9.)

Thus, the puppy's dog tag alone does not create a triable issue of fact as to whether the puppy was a trained service animal within the meaning of the ADA.

Second, Plaintiff does not present evidence raising a triable issue of fact with respect to the physical assistance the puppy provided Plaintiff. In fact, Plaintiff admitted in his deposition that the puppy did not assist him in walking or balancing. (Davis Dep. 15:17–24.) Although Plaintiff provided a note from his doctor, this note does not describe how a Great Dane service dog would ameliorate Plaintiff's back disability. (Davis Decl. Ex. 1.) The doctor's note also does not specify whether Plaintiff's disability requires the assistance of a service dog, but merely states Plaintiff "uses a service animal due to severe back pain/disc degeneration." (*Id.*) Plaintiff does not provide a declaration from his

policy, "certified" meant any animal "officially trained" to assist a person with a disability. *Id.* at 840. Thus, the Court finds it can consider industry standards for certifying service dog trainers and licensing service dogs in reviewing the evidence here.

doctor attesting to Plaintiff's physical reliance on the puppy. Indeed, Plaintiff does not submit any expert evidence showing his disability requires a service dog.

Plaintiff's declaration on its own does not suffice to create a triable issue of fact, especially where his previous deposition testimony contradicts his assertion in the declaration that the puppy ameliorates his disability. *See Kennedy,* 90 F.3d at 1481.

The ADA does not create unlimited license for disabled customers to enter facilities of public accommodation with their pets. The federal regulations limit protected entry to trained service animals that help ameliorate their owner's qualifying disability. 28 C.F.R. § 36.104. As Plaintiff fails to present any evidence creating a triable issue of fact as to whether Plaintiff's puppy was a trained service dog, the Court finds Plaintiff cannot—as a matter of law—prove the elements of his ADA claim.

### 3. Public Health and Safety Defenses

Defendants argue that under the ADA a public accommodation is not required to permit access to a service animal when that animal poses a "direct threat" that jeopardizes public health or safety. (Mot. at 14.) Defendants contend that, because Plaintiff's puppy was neither vaccinated nor trained, and Defendants' public accommodation was located in an officially declared "rabies area," the law did not require Defendants to permit entrance to Plaintiff and his puppy. (*Id.* at 14–15.) Alternatively, Defendants assert several affirmative defenses under the ADA. (*Id.* at 15.)

As Plaintiff fails to submit admissible evidence creating a triable issue of fact with respect to the ADA claim, however, the Court need not consider Defendants' defenses, and instead, finds Plaintiff's ADA claim fails as a matter of law.

### B. Intentional Infliction of Emotional Distress

■ To sustain an IIED claim under California law, a plaintiff must prove the following elements:

(1) extreme and outrageous conduct by the defendant with the intent of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

*Christensen v. Sup.Ct.,* 54 Cal.3d 868, 903, 2 Cal.Rptr.2d 79, 820 P.2d 181 (1991); *Hughes v. Pair,* 46 Cal.4th 1035, 1050, 95 Cal.Rptr.3d 636, 209 P.3d 963 (2009).

■ Here, Defendants were not required to admit Plaintiff's untrained puppy, and therefore, denial of entry does not constitute extreme or outrageous conduct. Nor is there any evidence suggesting Defendants excluded Plaintiff with the intent to cause emotional distress.[16] As there is no evidence raising a triable issue of fact, the Court finds Plaintiff's IIED claim fails as a matter of law.

---

**16.** In his Opposition, Plaintiff asserts that "telling an African–American he must eat outside is precisely the type of discrimination [P]laintiff faced in growing up in the South." (Opp'n at 12.) Plaintiff misstates the facts, however. Defendants' manager never denied Plaintiff entry to the restaurant. In her deposition, Ms. Garduno stated she told Plaintiff he could take the food "to-go" or leave his puppy outside. (Garduno Dep. 40:9–17.) Plaintiff seems to argue that race discrimination constitutes the extreme or outrageous conduct necessary to establish an IIED claim. *Id.* As Plaintiff offers no evidence suggesting Ms. Garduno denied entry to Plaintiff on account of his race, the Court finds this argument has no basis in fact.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion, DISMISS-ES Plaintiff's Complaint against Defendants WITH PREJUDICE, and DENIES as moot Plaintiff's Ex Parte Application to Amend the Scheduling Order.